MARION GRYM v. CITY OF VIRGINIA AND ANOTHER.[1]

December 14, 1934.

No. 30,027.

[1]Reported in 257 N. W. 661.

*Ryan & Scanlon,* for relators.

*J. W. Huhtala* and *McMahon & McMahon,* for respondent.

STONE, JUSTICE.

*Certiorari* to the industrial commission to review an award of compensation for the death of John Grym, who met his death August 10, 1933, while he was an employe of the fire department of the city of Virginia.

The one question now is whether the evidence sustains the conclusion, upon which the award rests, that the asphyxiation of Grym arose out of and in the course of his employment. It is difficult for us to see how any other conclusion is tenable. Mr. Grym was a fireman in the employ of the city. He came to his death in attempting, with other members of the fire department, to rescue two men who also lost their lives by the inhalation of carbon monoxide in "marsh gas" at the bottom of a well. The well was 190 feet outside the city limits.

The argument against compensation stands on the proposition that the rescue attempted by Grym and his fellow firemen was both *ultra vires* the city and beyond the scope of their employment. There is a provision in the city charter that:

"The commission shall have authority, under such provisions as the city council may enact, to send apparatus of the department, with complete force of employes, to the relief of any other community, or for the preservation of property endangered by fire, outside the limits of the city."

The council has enacted no "provisions" authorizing use of firemen or equipment beyond the city limits for any purpose. A fireman is employed, it is said, to prevent and extinguish fires and not to undertake duties beyond the limits of that field.

There is proof that it has long been the custom of the Virginia fire department to make fire runs beyond the city boundaries and not to limit its aid in other cases of casualty, such as those of drowning and asphyxiation, to the urban area. The test is not whether the operation was *ultra vires* the city but the much narrower one whether the accident arose "out of and in the course of the employment." 1 Mason Minn. St. 1927, § 4261. There is plenary evidence that the usual course of Grym's employment included rescues, and attempts thereat, in cases of drowning and asphyxiation, whenever the firemen and their equipment (they had gas masks) would be of aid. There is convincing testimony that a fireman refusing to go beyond the city limits, when ordered to do so by a superior, would be discharged for insubordination. In this case the rescue party set out pursuant to orders of the chief of the department and in his company. None of them knew that the fatal well was outside the city limits, and none would have stopped at the boundary had he known it. Grym was but obeying the orders of his commanding officer in a laudable enterprise which the evidence brings well within the limits of duty of a Virginia fireman. Against that it is of no effect that, as a matter of general definition, " 'firemen' means those whose duty it is to extinguish fires and to protect property and life therefrom." Behr v. Soth, 170 Minn. 278, 280, 212 N. W. 461, 462.

The order under review must be affirmed with an allowance to respondent of $100 for attorneys' fees in this court.

So ordered.