## SEBASTIAN HELFRICH v. NICHOLAS ROTH.[1]

December 21, 1934.

No. 30,044.

*Briggs, Weyl & Briggs,* for appellant.
*Newman & Bowman,* for respondent.

JULIUS J. OLSON, JUSTICE.

Defendant appeals from a judgment. Plaintiff brought an action to recover damages for injuries sustained by him on June 7, 1932,

[1]Reported in 258 N. W. 26.

at which time he was struck by an automobile operated by defendant. Defendant denied negligence, alleged contributory negligence on plaintiff's part, and further alleged that under the facts and circumstances herein the rights of the parties were governed by the workmen's compensation act. A jury trial was had resulting in a verdict in plaintiff's favor for $5,207.90. Defendant moved for an order amending the verdict so that it would be for such amount as plaintiff would be entitled to recover under the provisions of the workmen's compensation act. The motion further asked that in the event of denial of such motion defendant would move that the verdict be set aside and new trial granted upon the grounds: (1) That the damages were excessive and (2) that the verdict was not justified by the evidence. The court granted a new trial provisionally, that is, if plaintiff would consent to reduction of the verdict to $3,250 then the motion of defendant would be denied. Plaintiff duly consented to the reduction. Thereafter judgment was entered, and the matter is now here upon appeal therefrom.

Plaintiff is 60 years of age, lives at South St. Paul, and for a period of some 15 years or more has been employed by Swift & Company as a lard paddler. His working hours were from seven o'clock in the morning until 5:30 o'clock in the afternoon. It was his daily custom to walk from his home to his place of work. He arrived at Swift & Company's plant about 5:55 o'clock each morning, an hour and five minutes before his work actually commenced. This custom gave him a chance to change to his work clothes and take a rest before actual work began. On the day of the accident and in accordance with his usual custom, he walked from his home and was going easterly on Grand avenue approaching the stockyards, the property of the St. Paul Union Stock Yards Company. It was necessary for him to cross four sets of railroad tracks immediately adjoining the same. This street, 30 feet in width and having a 10-foot sidewalk on the northerly side thereof, is virtually an extension of Grand avenue although located upon and in fact being the private property of the stockyards company. It is two or three blocks in length and ends at the westerly side of the stock-

yards property. There is a private street running north and south parallel to the railroad tracks. This street intersects the east and west street just referred to. At this intersection there is a small brick building used by the watchman for the stockyards company. This place is generally referred to as "the north gate." There are, however, no gates. Plaintiff crossed the railroad tracks and started to cross the north and south street for the purpose of reaching the sidewalk immediately to his left. At this point and within two or three feet of the edge of the sidewalk, he was struck by defendant's automobile and received the injuries which form the basis for the present action. The place of the accident was about a city block from the property of Swift & Company and about 1,000 feet from the place where plaintiff worked. If the accident had not happened plaintiff intended to go to the timekeeper's office to give his number to the timekeeper. It was customary for the timekeeper to hand the employe a check with the employe's number on it. When plaintiff quit work in the evening he would drop the brass check so handed him in the morning into a slot in one of the windows of the timekeeper's office. This custom applies generally to the employes of Swift & Company. If plaintiff had gotten his check he would still have another 400 feet to go before he would reach the place where he did his work. Swift & Company has no entrance of its own to its property. All of its employes follow the route taken by plaintiff. The sidewalk which he was approaching is used by the employes of Swift & Company and several other concerns. This street or roadway is paved, and upon it many people, employes, and others having business to do with Swift & Company, United Packing Company, and the St. Paul Union Stock Yards Company travel. Over this roadway a great number of trucks and automobiles pass daily. It is a very busy place.

The defendant had been employed by Swift & Company as a watchman for some four years. At the time of the accident and for some time prior thereto he was a night watchman, his working hours being from six o'clock in the evening until six o'clock in the morning. When quitting his work he was permitted to change his clothes before six o'clock so that he would arrive at the timekeeper's

office at about that time. He owned an automobile in which he went from his home to his place of employment and back home when his hours of service were ended. The automobile so used by him was for his own convenience. His work as watchman did not require the use of the automobile in the discharge of any duty he owed to his employer. At the time of the accident he was driving his automobile from the place where it had been parked, and he was headed for the timekeeper's office to check out and then start for his home. As will be seen from what has been related, both parties were headed for the same place, the timekeeper's office. Both parties at the time of the accident were employes of the same employer, Swift & Company, and that company had elected to subject itself to the workmen's compensation act.

When the evidence in the case was closed both parties stipulated that the cause might be submitted to the jury without defendant waiving the defense that the damages were limited and governed by the workmen's compensation act and that if a verdict were returned in favor of plaintiff, defendant might make such motion as he saw fit in that respect, the same as if he had done so before the case was submitted to the jury.

Defendant assigns three errors: (1) That the court erred in denying his motion for an order amending the verdict so as to strike out the amount awarded him by the jury and inserting in lieu thereof $1,036.77 "or such amount as the plaintiff-respondent may be entitled to pursuant to the provisions of the workmen's compensation act"; (2) that the verdict is not justified by the evidence and is contrary to law; and (3) that the judgment is not justified by the evidence and is contrary to law.

For review here is the single question, aptly put before us by defendant in this form: "The claim which we urge upon this appeal is that from the evidence it is established as a matter of law that, the rights of the parties hereto are governed exclusively by the terms of the workmen's compensation act." To sustain this position defendant refers us to 1 Mason Minn. St. 1927, § 4291, which limits damages to the amount recoverable under part 2 of the act, but provides that "subdivision 1 of this section shall apply only

where the employer liable for compensation under part 2 of this act, and the other party or parties legally liable for damages were engaged in the due course of business, (a) in furtherance of a common enterprise, or (b) the accomplishment of the same or related purposes in operation on the premises where the injury was received at the time thereof, and not otherwise."

To bring the case within the act it must be shown, under 1 Mason Minn. St. 1927, § 4326(j), that the injuries arose "out of and in the course of employment" as therein limited and defined. But the, section does not "cover workmen except while engaged in, on, or about the premises where their services are being performed, or where their services require their presence as a part of such service, at the time of the injury, and during the hours of service as such workmen."

Defendant maintains that the injury occurred upon "the working premises" of his employer and cites Simonson v. Knight, 174 Minn. 491, 219 N. W. 869, 870; Ludwig v. Farmers Shipping Assn. 181 Minn. 90, 231 N. W. 803; Lienau v. N. W. Tel. Exch. Co. 151 Minn. 258, 186 N. W. 945, and other cases of similar import. In the Simonson case the court said [174 Minn. 493]:

"The working premises may include land belonging to or used by the employer, otherwise unoccupied but appurtenant to the building," and that where "the cause of injury is found in a hazard to which in the main only employes are subject, and it is in the building where the employment goes on or on the premises of the employer immediately adjacent thereto, we think a case of compensation is made. The controlling idea is that the hazard is localized on and peculiar to the place of employment rather than detached therefrom and so generalized to the community at large. In such a case the risk is referable to the employment rather than anything outside and beyond it."

In the Ludwig case it was held that the employe was entitled to compensation (syllabus, 181 Minn. 90) "because his employment subjected him to a degree of exposure, wherein he was injured, greater than the public generally and upon grounds so used as to be substantially and practically a part of the employer's premises."

In Grym v. City of Virginia, 193 Minn. 62, 64, 257 N. W. 661, we held that the dependent, widow of a fireman who had lost his life in an attempted rescue of men asphyxiated in a well immediately outside the city limits, was entitled to compensation, it appearing that decedent's employment "included rescues, and attempts thereat, in cases of drowning and asphyxiation, whenever the firemen and their equipment * * * would be of aid." In that case [193 Minn. 64] "the rescue party set out pursuant to orders of the chief of the department and in his company." When the men started out to do this work none of them knew that the location was beyond or outside of the city limits. The deceased fireman was found to be [193 Minn. 64] "obeying the orders of his commanding officer" and "well within the limits of duty" of a fireman. The fatal spot in that case was 190 feet from the city limits. The cases referred to obviously do not go as far as we must go in this case if defendant's theory is to prevail. These cases are clearly distinguishable. Admittedly, plaintiff was injured about 1,000 feet from his place of employment. He was upon the premises of another owner not under the control of the master nor subject at all to its control. We cannot say as a matter of law that the injury occurred upon the employer's premises.

The next question is whether the injury occurred "during the hours of service" of plaintiff. More than an hour would have to elapse before he was required to begin his work. The master had no control over him or his movements. Nor were his risks or hazards at all different from those of any other person using this street, whether employe, visitor, or customer. There was nothing in respect of this location or the happening of the accident at all different from the ordinary street risk or hazard of any pedestrian. The mere fact that this happened upon the only avenue or entrance to Swift & Company's plant is no more controlling than would be an accident happening at some other place on Grand avenue. So applying the test urged by defendant, quoting from the Simonson case, 174 Minn. 494, *viz.*: "To accomplish the purpose of the law it must be held that, for the purposes of compensation, a workman is within the hours of service when, having put aside his own

independent purposes, he has entered the premises of his employer appurtenant to the place where his service is rendered for the purpose of beginning such service immediately or within a reasonable time and is approaching the place thereof by an avenue customarily used by employes," it would be difficult indeed to hold, *as a matter of law,* that plaintiff's injuries occurred "during the hours of service."

Defendant was not rendering any service for his master in driving his automobile from its parking place to the timekeeper's office. It is too clear for argument *contra* that what he was doing at that particular moment was in furtherance only of his own individual convenience.

In Nesbitt v. Twin City F. & F. Co. 145 Minn. 286, 289-290, 177 N. W. 131, 132, 10 A. L. R. 165, the court quotes with approval the rule laid down in Podgorski v. Kerwin, 144 Minn. 313, 317, 175 N. W. 694, as follows:

"It is a well settled general rule that an injury suffered by an employe, in going to or returning from the employer's premises where the work of his employment is carried on, except in special instances not here involved, does not arise out of his employment and entitle him to compensation."

Judgment affirmed.