GLADYS LOCKE v. COUNTY OF STEELE AND ANOTHER.[1]

April 18, 1947.

No. 34,365.

[1]Reported in 27 N. W. (2d) 285.

*Reynolds & McLeod,* for relators.
*Helon E. Leach,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Certiorari upon the relation of the county of Steele and its insurer to review a decision of the industrial commission awarding compensation to Gladys Locke, employe.

The facts are not in dispute. Employe was a stenographer in the office of Melvin H. Jenke, Steele county superintendent of schools. Her salary was $70 a month, and her office was in the Steele county courthouse. At the time she commenced work, in October 1945, she was instructed that as part of her duties she was to go to the post office each noon to get the mail. To accomplish this, she was instructed to leave her office each day at 12 noon for lunch, and at 1 p.m., following her lunch, regardless of where taken, to proceed to the post office, pick up the mail, and thereafter return with it to her office by 1:15 p.m. The post office is approximately one block north of the regular route between employe's home and her office in the courthouse, so that if she lunched at home, thereafter in going to the post office she would follow the route to the courthouse for a short distance, leave it to traverse the extra space to

and from the post office, and resume it to continue thereon to her own office.

Pursuant to such instructions, on January 9, 1946, after lunch, preparatory to going for the mail and thence returning to her office, employe left her home about 1 p.m. After reaching the public sidewalk, she proceeded on her way a few steps, slipped on the ice, and fell, causing the injuries which gave rise to these proceedings. At the time of her accident she had not yet reached the north turn approaching the post office, but was still on the regular route between her home and the courthouse. Relators contend that, because at the time of her fall she was still on this regular route, she was not within the protection of the compensation act, but they concede that, had she been traversing the extra block to the north at that time, the coverage of the act would have extended to her.

With reference to employe's instructions and duties in procuring the mail and the events leading up to the accident, she testified as follows:

"Q. What time did you leave your house on your way to work on the 9th of January, 1946?

"A. Shortly after one.

\* \* \* \* \*

"Q. Were you on your way to the post office at the time you fell?

"A. Yes. That was the only errand I had that noon. When I was hired I was instructed by Mr. Jenke that it was my duty to get the mail mornings and noons. \* \* \*

"Q. Mr. Jenke instructed you as a part of your duties to go to the post office on your way to work and get the mail?

"A. Yes.

\* \* \* \* \*

"Q. *And each day at one, on the way back to work, you had been instructed by Mr. Jenke to get the mail?*

"A. Yes.

\* \* \* \* \*

"Q. And you left your home in time to walk to the post office and get the mail and get to the office at 1:15?

"A. Yes." (Italics supplied.)

At the hearing before the referee compensation was denied. On appeal, the referee's finding was reversed by the industrial commission, which found:

"That on January 9, 1946, said employe sustained an accident arising out of and in the course of her employment resulting in a fracture of her right hip."

Compensation was awarded accordingly. The proceedings here are to review the decision of the commission.

■ The workmen's compensation act (Minn. St. 1945, § 176.01, subd. 11) defines "personal injuries arising out of and in the course of employment" as covering workmen "while engaged in, on, or about the premises where their services are being performed, or where their services require their presence as a part of such service, at the time of the injury, and during the hours of service as such workmen."

Thereunder we have held that the act is not to be given a too restricted construction, either as to "hours of service" or "the premises of the employer," Simonson v. Knight, 174 Minn. 491, 219 N. W. 869; Green v. County of Chippewa, 189 Minn. 627, 250 N. W. 679; and that a risk is incidental to employment when it is connected with what an employe has to do in fulfilling his contract of service. Peterson v. Farmers State Bank, 180 Minn. 40, 230 N. W. 124.

■ Accordingly, the coverage of the act has been held to extend to employes engaged in the services of their employers in duties calling them upon the street and to protect them while so engaged against injuries arising from "street risks," even though others not so employed are subject to the same risks. Mahowald v. Thompson-Starrett Co. 134 Minn. 113, 117, 158 N. W. 913, 915, 159 N. W. 565; Hansen v. Northwestern Fuel Co. 144 Minn. 105, 174 N. W. 726; Bookman v. Lyle C. & R. E. Co. 153 Minn. 479, 190 N. W. 984; Annotation, 51 A. L. R. 514; Horovitz, Workmen's Compensation, pp. 95-105. In the Bookman case, this principle was applied to an employe injured after leaving her employer's office at 5:30 p.m. while

crossing the street (1) to deposit her employer's mail in a mailbox, one of the duties required of her by her employer, and (2) thereafter to board a streetcar to return home, the route she was following being common to both objectives at the time of her injury.

■ Ordinarily, an employe injured on his way to or from work, either during his regular lunch hour or otherwise, and not engaged in any special service for his employer at the time, is not entitled to the benefits of the compensation act. Nesbitt v. Twin City F. & F. Co. 145 Minn. 286, 177 N. W. 131; Koubek v. Gerens, 147 Minn. 366, 180 N. W. 219; Helfrich v. Roth, 193 Minn. 107, 258 N. W. 26. The reason for the rule thus expressed is set forth in the Nesbitt case as follows (145 Minn. 291, 177 N. W. 133).:

"* * * The injuries were suffered before and not during his hours of service, at a time when defendant [employer] had no control over him, and before the period covered by his wages had begun."

■ The court has not applied the foregoing rule, however, when, during the lunch hour, the employe, in addition to attending to his personal affairs, engages in some work for his employer pursuant to the latter's instruction and thereby serves a double purpose—his own and his employer's, Hansen v. Northwestern Fuel Co. *supra*; Krause v. Swartwood, 174 Minn. 147, 218 N. W. 555, 57 A. L. R. 611; Callaghan v. Brown, 218 Minn. 440, 16 N. W. (2d) 317; or when the evidence discloses that the contract of employment, either expressly or by implication, provides "that the employment shall begin when the employe leaves his home to go to work and shall end when he returns to it," the employe's travel to and from work in such case being regarded as an incident of his employment and hence covered by the act. Cavilla v. Northern States Power Co. 213 Minn. 331, 340, 6 N. W. (2d) 812, 817, citing Nehring v. Minnesota M. & M. Co. 193 Minn. 169, 258 N. W. 307; Taylor v. M. A. Gammino Const. Co. 127 Conn. 528, 18 A. (2d) 400; and Voehl v. Indemnity Ins. Co. 288 U. S. 162, 169, 53 S. Ct. 380, 383, 77 L. ed. 676, 680, 87 A. L. R. 245, where the United States Supreme Court stated:

"* * * While service on regular hours at a stated place generally begins at that place, there is always room for agreement by which the service may be taken to begin earlier or elsewhere."

■ Here, the evidence clearly establishes that as a part of her employment employe was given specific instructions to commence the performance of her afternoon service at 1 p.m. each day immediately following the completion of her lunch hour, at which time she was to proceed to the post office, procure the mail, and return to her office by 1:15 p. m. In her discretion, employe was permitted to eat her lunch at her home, at a restaurant in some other part of the city, or, for that matter, possibly in her own office. That was a matter of personal choice. Immediately thereafter, however, at 1 p.m., her services for her employer were resumed. Employe's starting point for this purpose was the place where she had had her lunch. The place from where she started was immaterial to her employer so long as she procured the mail and was back at her office by 1:15 p. m. each day. This duty required her presence on the street for her employer's purpose at 1 p.m. each day and subjected her to ordinary street risks while performing such services. She was not then engaged in her personal affairs, but was acting exclusively for the benefit of her employer and was fulfilling her contract of employment during her required hours of service. The true test in determining employe's coverage under the act was not the route she happened to be following at the time of her injury, but her presence *at a place where,* and *during the time when,* her services were required to be performed under her employment contract.

As stated in Krause v. Swartwood, 174 Minn. 149, 218 N. W. 556, 57 A. L. R. 611, *supra:*

"* * * Even though not in the office, the relator while at lunch was on her employer's business. She was where he directed her to be, and doing what he required her to do * * *. *That the meal was for relator's refreshment did not take her out of the course of the employment* * * *. His directions and her * * * acquiescence

continued her employment through the noon hour and projected it into the restaurant where she lunched * * *." (Italics supplied.)

The instant case is stronger than the Krause case, for here, at the time of the accident, employe's lunch hour had actually ended, and her required daily services for her employer had been resumed, to the complete exclusion of her own personal affairs. The case may thus be distinguished from Simonds v. Reigel, 165 Minn. 458, 206 N. W. 717; Jotich v. Village of Chisholm, 169 Minn. 428, 211 N. W. 579; and Kayser v. Carson Pirie Scott & Co. 203 Minn. 578, 282 N. W. 801, where compensation was denied because at the time of injury the employe was engaged in his own personal service or was at a place where and during a time when his presence was not required for his work.

Under the foregoing authorities, we must hold that the findings of the commission are amply sustained by the evidence outlined, and the decision must be affirmed. Employe may tax $250 attorney's fees in addition to statutory costs.

Affirmed.