## VERLYN B. JOHANNSEN v. ACTON CONSTRUCTION COMPANY, INC., AND ANOTHER.

119 N. W. (2d) 826.

February 15, 1963—No. 38,750.

*Shepley, Severson, Bey & Ochs,* for relators.
*Davison & Fraley,* for respondent.

KNUTSON, CHIEF JUSTICE.

Certiorari to review a decision of the Industrial Commission awarding compensation to an injured employee.

The facts are not in dispute. Employer, Acton Construction Company, Inc., at the time of the injury sustained by the employee on August 19, 1960, was engaged in the construction of a pumping station building for the sewage drainage system of the city of Red Wing. The job site was located in a portion of the city known as Levee Park. Levee Park is bounded on the north by the Mississippi River and on the south by a number of railroad tracks. The west boundary of the park is Broad Street, which runs generally in a north and south direction, crossing the railroad tracks at approximately right angles. The building which was being constructed was 1,073 feet east of the centerline of Broad Street. Broad Street is a public road, and the approach to the railroad tracks is protected by warning lights. The lift station which was being constructed at the time the injury was sustained was 11 to 15 feet north of the most northerly railroad track, but a cofferdam or sheet piling which went around the building on the side nearest the railroad was 4 feet 6 inches from the track. Employees who came to work in their automobiles approached the working area along Broad Street. After crossing the railroad tracks, they

turned right on a roadway running alongside the river, parking their cars within the park.

Approximately south of the building that was being constructed is located Potter Street, which also runs in a north and south direction. At the south side of the railroad tracks, across a part of Potter Street, was erected a barricade on which appeared the words "Private Property. No Thoroughfare." A few employees, in approaching the work area, drove along Potter Street as far as they could and parked their cars on the street. Some of the employees crossed the railroad tracks on foot from Potter Street. There was some planking over the tracks at that point, and crossings were made by vehicles from a mill located to the south of the working area. On a few occasions, vehicles used in construction had also crossed at this point to the working area involved here. Employees were not forbidden by the employer to cross the tracks from Potter Street. The superintendent and foreman on the job, as well as others, crossed on foot at this point.

The employees were allowed one-half hour for the noon lunch, from 11:30 to 12 o'clock. About two-thirds of some 30 employees brought their lunch with them, and many of the others ate at a restaurant on Potter Street, about two blocks south of the working area.

On the forenoon of August 19, 1960, petitioner was engaged in cutting holes in sheet piling on the river side of the building that was being constructed. When the noon lunch time approached, the superintendent or foreman on the job waved to him that it was time to go to eat, and one of them called to him, requesting that he announce the lunch hour to a workman who was down in a hole. The foreman and superintendent had proceeded part way across the track when petitioner started to follow them. There was a boxcar located on one of the tracks, and the superintendent and foreman noticed that some other cars were being shunted into this boxcar just as petitioner was approaching it. They yelled at him to get back, but it was too late, and the boxcar, as it was pushed forward, struck him, causing the injuries for which he seeks compensation.

The record shows that in leaving the working area the employees could have proceeded west a distance of 1,073 feet to Broad Street,

crossed the tracks there, and then walked back to Potter Street to reach the restaurant at which they intended to have lunch. Eugene D. Henry, the superintendent on the job, testified:

"A.   We took the shortest route possible, which was Potter Street, to—up Potter to the Maidrite Cafe, which is at the head of Potter Street.

"Q.   Did you do that almost every noon?

"A.   Every noon.

"Q.   Every noon you did that.

"A.   Right.

*    *    *    *    *

"Q.   Well, then, at lunch, if you'd walk up town in order to use the Broad Street crossing, you would have to go a substantial distance out of your way, is that correct?

"A.   That's correct."

He further testified as follows:

"Q.   There's no question about that 1073 feet.

"A.   From the edge of our building to the center of Broad Street.

"Q.   So if you were going to the place where you normally ate, that would mean you'd walk out of your way twice.

"A.   You couldn't make it in the half-hour period.

"Q.   In the half-hour period.

"A.   No. And be waited on and eating at the Maidrite Cafe.

"Q.   And that's where you customarily ate.

"A.   Right.

"Q.   And many of the employes who ate away from the job site, did they eat at the Maidrite Cafe?

"A.   Yes."

Some supplies were brought to the construction site by rail. Employees then had to work on the tracks in unloading such supplies. The employer had an easement on the railroad right-of-way, but the extent of it does not appear from the record.

The Industrial Commission, in affirming the findings of the referee, held that the injury arose out of and in the course of petitioner's

employment. The only question before us is whether the evidence sustains these findings of fact.

Minn. St. 176.011, subd. 16, defines personal injury as follows:

" 'Personal injury' means injury arising out of and in the course of employment * * * but does not cover an employee except while engaged in, on, or *about* the premises where his services require his presence as a part of such service at the time of the injury and during the hours of such service. * * *" (Italics supplied.)

In discussing this statutory provision in Nelson v. City of St. Paul, 249 Minn. 53, 55, 81 N. W. (2d) 272, 275, we said:

"* * * The phrase 'arising out of' the employment is expressive of the requirement that there must be a causal connection between the conditions which the employer puts about the employee and the employee's resulting injury. The requisite causal connection—which need not embrace direct and proximate causation as for a tort—exists if the employment, by reason of its nature, obligations or incidents may reasonably be found to be the source of the injury-producing hazard. The causal connection of source is supplied if the employment exposes the employee to a hazard which originates on the premises as a part of the working environment, or if the employment, as a part of the working environment, peculiarly exposes the employee to an external hazard whereby he is subjected to a different and a greater risk than if he had been pursuing his ordinary personal affairs. In other words, if the injury has its origin with a hazard or risk connected with the employment, and flows therefrom as a natural incident of the exposure occasioned by the nature of the work, it arises out of the employment. * * *

"* * * The phrase 'in the course of' employment refers to factors of *time and place* and means that an injury to be compensable must arise within the *time and space* boundaries of the employment. * * *

"* * * The statutory limitation (§ 176.01, subd. 11) that the accidental injury to be compensable must *occur during the hours of service* is to be given a liberal and reasonable construction so as to include

during such hours a reasonable time for ingress[1] after the employee, having put aside his own independent purposes, has come to a *point which is not only immediately adjacent to the working premises but also within the range of hazards peculiarly associated with the employment.* * * *

\*     \*     \*     \*     \*

"In determining coverage under the act, the fact that the employee, at the time of the accident, was within range of dangers peculiarly associated with the employment is a material factor in defining the premises of the employer. We need not here determine whether coverage under the 'in the course of' clause is in all cases coextensive with the zone of danger or risk area. It is enough here to hold, as we must clearly do under any reasonable application of the Workmen's Compensation Act, that *whenever the hazards of employment spill over the boundary line and injure an employee on his way to work, his injury arises within the statutory space limitations of the employer's premises and is compensable as having arisen in the course of the employment.* Obviously, this rule does not protect an employee against all hazards, perils, and dangers on his journey from home to work and from work back to his home." (Italics supplied in part.)

1. We follow the rule that ordinarily an employee who is injured, either in going to or away from the premises of his employment, whether it be during a lunch hour,[2] or before or after his work actually commences or ceases,[3] is not entitled to the benefits of the act unless he is engaged in a service for his employer while so traveling.[4]

2. We have frequently held that an employee is within the protection of the act during a reasonable time before he commences work

---

[1] As applied to this case, we should add "or egress."

[2] Callaghan v. Brown, 218 Minn. 440, 16 N. W. (2d) 317.

[3] Helfrich v. Roth, 193 Minn. 107, 258 N. W. 26; Nesbitt v. Twin City Forge & Foundry Co. 145 Minn. 286, 177 N. W. 131, 10 A. L. R. 165; Otto v. Duluth St. Ry. Co. 138 Minn. 312, 164 N. W. 1020.

[4] Locke v. County of Steele, 223 Minn. 464, 27 N. W. (2d) 285; 1 Larson, Workmen's Compensation Law, § 15.00; 7 Schneider, Workmen's Compensation Law (Perm. ed.) § 1634; Annotation, 141 A. L. R. 862.

or after he ceases work for the purpose of ingress to and egress from the place of employment.[5]

3. Case law has developed an exception to this rule, now accepted by most authorities, that even though an employee may have left, or not yet entered, the premises of his employment he is still within the protection of the act if exposed to a hazard which has a causal relationship to his employment. The rule is expressed in 1 Larson, Workmen's Compensation Law, § 15.00, as follows:

"As to employees having fixed hours and place of work, injuries occurring on the premises while they are going to and from work before or after working hours or at lunchtime are compensable, but if the injury occurs off the premises, it is not compensable, subject to several exceptions. Underlying some of these exceptions is the principle that course of employment should extend to any injury which occurred at a point where the employee was within range of dangers associated with the employment."

The latter exception is discussed by Professor Larson at § 15.13 of his treatise. Many of the cases involving this exception deal with injuries occurring while crossing railroad tracks or in falls on sidewalks or other paths of ingress to or egress from the premises. Examples of the two extremes in the application of the rule may be found in Kelley v. Northwest Paper Co. 190 Minn. 291, 251 N. W. 274, where he held the employee not eligible for compensation, and Ludwig v. Farmers Shipping Assn. 181 Minn. 90, 231 N. W. 803, where, under facts quite similar to those involved here, we held the employee was entitled to compensation. In the Ludwig case, the employee, as here, was injured in crossing a railroad track in his automobile while leaving his employer's premises to get a lunch. In holding that he was entitled to compensation, we said (181 Minn. 91, 231 N. W. 803):

"The premises of the railroad tracks are near to the yards and on

---

[5]Lienau v. Northwestern Tel. Exch. Co. 151 Minn. 258, 186 N. W. 945; Olson v. Trinity Lodge, 226 Minn. 141, 32 N. W. (2d) 255; Simonson v. Knight, 174 Minn. 491, 219 N. W. 869.

the short road which the employe necessarily used in going to and from the principal place of his work. This subjected him to a hazard peculiarly incident to his employment and inherent in the immediate premises in such a way substantially and practically as if he were on his employer's premises. Being required exclusively to travel this particular road made dangerous by its location, he was put in the position of one who had no choice in the selection of a route of travel. His employment in effect directed its use. For all practical purposes this short road was a part of his employer's premises. He was expected to and did use it as if it were such. He was consequently subjected to a degree of exposure greater than the public generally, who used it occasionally only. He was also in a different position than an ordinary workman in coming and going to and from his work, being exposed only to ordinary street risks."

Relators here seek to differentiate the Ludwig case from the case before us on the ground that there the only means of ingress and egress was the one used by the employee, whereas here he had the option of using the Broad Street crossing, which was protected by warning lights. However, this difference is not of great significance when viewed in the light of the facts of the case and the reasons for the rule, for the Potter Street crossing was used regularly and customarily by the employees in going to and from the place where the work was being done.

In Bountiful Brick Co. v. Giles, 276 U. S. 154, 48 S. Ct. 221, 72 L. ed. 507, a situation such as we have here prevailed in that more than one route was available for ingress and egress. In holding that the employee was entitled to compensation, the United States Supreme Court said (276 U. S. 158, 48 S. Ct. 222, 72 L. ed. 509):

"* * * If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, *or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises,* the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance. In other words,

the employment may begin in point of time before the work is entered upon and in point of space before the place where the work is to be done is reached. Probably, as a general rule, employment may be said to begin when the employee reaches the entrance to the employer's premises where the work is to be done; but it is clear that in some cases the rule extends to include adjacent premises used by the employee as a means of ingress and egress with the express or implied consent of the employer. * * *

\* \* \* \* \*

"* * * Since the only way of access to its brickyard from the east was across the railway tracks, the company necessarily contemplated the crossing of them by its employees. No definite line of travel being indicated by the company or followed by the employees, who, with the company's full knowledge and acquiescence, habitually crossed wherever they saw fit, it results that, however the crossing was made, the risk thereby incurred was reasonably incidental to the employment and became annexed as an implied term thereof. If it were necessary to strengthen the implication of consent on the part of the company to the crossing by any way its employees chose to take, it would be enough to refer to the testimony of the manager, who, knowing of the practice, did not forbid it, but in effect approved it by warning Giles simply to be careful." (Italics supplied.)

The same could be said of the case now before us. Here, the superintendent and foreman on the job not only approved of crossing at Potter Street but they accompanied the employee in so doing. It is to be noted that the Giles case arose under the laws of Utah, and the act in that state provided compensation for personal injury or death "arising out of *or* in the course of his employment" (italics supplied), whereas our act uses the conjunctive "and" in place of the disjunctive "or." However, in determining whether the injury was compensable when it occurred off the premises of the employer, the same reasoning would apply to the language of either statute.[6]

---

[6]See, also, Jaynes v. Potlatch Forests, Inc. 75 Idaho 297, 271 P. (2d) 1016, 50 A. L. R. (2d) 356.

While it is difficult, if not impossible, to reconcile many of the decisions on this subject, and it is hardly desirable to attempt to formulate a rule that can be applied with mathematical precision to all fact situations, the rationale of the rule is that, if the employee, in going to or leaving the working premises, is exposed to a hazard causally connected with the employment and sustains injury while so doing, the injury arises out of and in the course of the employment. It is only reasonable to conclude that an employee is within the protection of the act as long as he is exposed to a hazard causally connected with the employment and peculiar to it. This does not mean that the protection will continue when he has entered the avenues of travel where he is exposed to no work-connected hazard or any hazard greater than that to which all others not so employed are exposed.

In Christian v. Chicago & Illinois Midland Ry. Co. 342 Ill. App. 656, 661, 97 N. E. (2d) 576, 579, the Illinois court said:

"* * * The causative danger must be peculiar to the work and not common to the neighborhood. The criterion is not that other persons are exposed to the same danger, but rather that the employment renders the workmen peculiarly liable. If the injury can be seen to have followed as a natural incident to the work and as a result of the exposure occasioned by the nature of the employment, then it arises out of the employment. The question is did the circumstances of the employment require the decedents to incur some special risk in using the roadway in question."

The cases involving injuries sustained while crossing railroad tracks in going to or coming from the place of employment are exhaustively annotated in 50 A. L. R. (2d) 363. It would be a useless task to attempt to review them here. For those interested in perusing the matter further, they are readily available. See, also, 1 Larson, Workmen's Compensation Law, § 15.00, et seq.; 7 Schneider, Workmen's Compensation Law (Perm. ed.) c. 29.

Relators rely heavily on Sommers v. Schuler Chocolates, Inc. 239 Minn. 180, 58 N. W. (2d) 194, and Corcoran v. Fitzgerald Brothers, 239 Minn. 38, 58 N. W. (2d) 744. These cases are of

little help here. In the Sommers case we applied the rule that, once the employee has left the premises of his employer and is injured while walking on a sidewalk at the place where no causal relationship exists between the injury and the employment, he is not entitled to compensation. In the Corcoran case, we held that, where a safe means of ingress to and egress from the premises is provided by the employer and the employee takes it upon himself to climb over a 10-foot fence obviously intended to prevent ingress or egress, he removes himself from the hazards of the employment and assumes a hazard not at all causally connected with the employment. These cases are clearly distinguishable upon both facts and law.

It is further contended that, inasmuch as there was here a safe means of ingress and egress, the employee comes within the Corcoran case in choosing a route over the railroad tracks where there were no warning lights. However, the two situations are not at all similar. Here, the Potter Street crossing was available to and in common use by any of the employees. The superintendent and foreman on the job used it, as well as other employees, and it is not claimed that either the employer or anyone in charge of the work ever forbade its use. In order to use the Broad Street crossing it was necessary to travel 1,073 feet west and the same distance east to reach the restaurant which the employees customarily patronized. Only one-half hour was allowed for lunch. The superintendent testified that in view of the short lunch hour provided there was insufficient time to travel from the site of the work to the restaurant by way of Broad Street. It also appears from the record that the employees of this contractor frequently had to go upon the railroad right-of-way in the performance of their work. Under these circumstances, the Industrial Commission correctly held that employee was exposed to a hazard of his employment within the meaning of the statutory language that he must be in, on, or about the premises where his services required his presence during the hours of such services. The rule that a reasonable opportunity for ingress to and egress from the premises is considered to be within the place and time in which any employee is covered by the act should include the hazard here in crossing the railroad tracks

adjacent to the working premises as an incident to reasonable egress and ingress and as such brings the employee within the protection of the act.

Respondent is allowed $250 attorneys' fees.

Affirmed.