## JAMES F. CORCORAN v. FITZGERALD BROTHERS AND ANOTHER.[1]

March 20, 1953.

No. 35,910.

*William A. Cole,* for relator.

*John M. Prins,* for respondents.

[1]Reported in 58 N. W. (2d) 744.

KNUTSON, JUSTICE.

Certiorari to the industrial commission to review a decision denying compensation to an employee.

The facts are not in dispute. Relator, a student at the University of Minnesota, was employed as a laborer by Fitzgerald Brothers during the summer vacation. Fitzgerald Brothers were engaged in the construction of a new hippodrome building on the Minnesota state fair grounds. In order to protect the property of the contractor, a ten-foot wire mesh fence with barbed wire around the top was constructed around the project. Gates for ingress and egress were provided at the northeast and southwest corners of the fence.

Relator began work on the building on July 17, 1951. He entered the fenced area through the gate in the northeast corner of the fence. At the close of work that day he found the northeast gate locked, so he and his fellow employees followed the fence around to the southwest gate, which was open. The next day relator parked his car about one block east of the northeast gate and entered through that gate, which was then open. That evening he again found the northeast gate locked and the other employees again went to the southwest gate to find an exit. Relator found a ladder near the fence and set it against the fence. He testified that at that point there was no barbwire on top. In attempting to scale the fence by means of the ladder, he fell and sustained the injuries for which he now seeks compensation. His testimony as to what happened is as follows:

"I climbed the ladder and stood at the top and was ready to jump and had jumped, but I caught my foot on the very top of the fence. Then I fell, with my body parallel to the ground and landed on my elbow."

Relator testified that his reason for climbing the fence was to save himself the walk which would have been necessary had he gone to the southwest gate. The additional distance he would have had to walk was about equal to the length and width of the building and back again, a distance of about 3½ or 4 ordinary blocks.

The only question involved is whether the accident arose out of and in the course of the employment. The referee found against relator and, on appeal, was affirmed by a majority of the commission.

We have frequently had occasion to construe the meaning of the words "arising out of and in the course of employment." See, Weidenbach v. Miller, 237 Minn. 278, 55 N. W. (2d) 289. In Olson v. Trinity Lodge, 226 Minn. 141, 144, 32 N. W. (2d) 255, 257, we held:

"The phrase 'arising out of' the employment expresses the factor of origin, source, or contribution rather than cause in the sense of being proximate or direct," while "The companion phrase 'in the course of' employment refers to the factors of *time* and *place.*"

Nearly all courts now recognize that the protection of workmen's compensation acts extends to a reasonable period beyond actual working hours. See, Riesenfeld, *Forty Years of American Workmen's Compensation,* 35 Minn. L. Rev. 525, 545. In line with these decisions we have held that the employee is protected while leaving the premises of his employment. Novack v. Montgomery Ward & Co. 158 Minn. 495, 499, 198 N. W. 290, 292, where we said:

"Where the employe enters the premises of the employer on her way to her work and pursues the proper course to the place of her labor, while there in the performance of her duties as an employe, and until she has left the premises *by the ordinary means of exit,* she is engaged in the ordinary pursuit of her employment, and is entitled to the protection and is subject to the limitations of the compensation act." (Italics supplied.)

We have also held that it is the duty of the employer to furnish a safe means of ingress to and egress from the premises and that the employee is covered by the act while using such means of ingress and egress. Lienau v. N. W. Tel. Exch. Co. 151 Minn. 258, 186 N. W. 945.

However, where an employer does furnish a safe means of ingress and egress and the employee, for his own convenience, chooses not to

use it but, instead, selects a more hazardous means of leaving the premises, not customarily used by employees, he steps outside the scope of his employment and it cannot then be said that an injury which he sustains while so leaving the premises arises out of his employment. Associated Ind. Corp. v. Industrial Acc. Comm. 18 Cal. (2d) 40, 112 P. (2d) 615; Yannick v. Lehigh Valley Coal Co. 126 Pa. Super. 431, 191 A. 213.

In General Steel Castings Corp. v. Industrial Comm. 388 Ill. 66, 71, 57 N. E. (2d) 454, 457, the employee, to save a walk of about 300 feet, chose to cross some railroad tracks in leaving his employer's premises and in so doing was injured. In denying compensation the Illinois court said:

"* * * An employee may not unnecessarily increase the risk of injury to himself or choose an unnecessarily dangerous place for the doing of an act which is claimed to be incidental to his employment. Where the employee assumes to undertake a dangerous act which is strictly outside of the scope of his employment, the risk undertaken is not incidental to the employment."

It is common knowledge that a ten-foot fence, erected as was the one in this case, is there for the purpose of preventing ingress or egress at the places where it is located. The employer provided a safe means of egress; the employee had used that exit the previous night and knew that it was there. When he unnecessarily chose to climb over the fence to save himself a comparatively short walk, it cannot be said that the injury sustained in so doing arose out of his employment. The commission correctly so held.

Affirmed.