## WILEY MANUFACTURING CO. ET AL. v.
## ROBERT LESLIE WILSON ET AL.

[No. 337, September Term, 1975.]

*Decided January 29, 1976.*

88

The cause was argued before POWERS, MOORE and LOWE, JJ.

*Alfred M. Porth* and *Theodore B. Cornblatt,* with whom were *Smith, Somerville & Case* on the brief, for appellants.

*A. Harold DuBois,* with whom were *Verderaime & DuBois, P.A., A. Freeborn Brown, Stanley Getz* and *Brown, Brown & Lanaham* on the brief, for appellees.

MOORE, J., delivered the opinion of the Court.

Taking a short cut via a railroad right of way to a company parking lot located some 790 feet from the plant where they were employed, two co-workers were seriously injured and their companion was killed when they were struck by a train. In the workmen's compensation case which followed, the claimants prevailed before the Workmen's Compensation Commission and its awards were affirmed by the Circuit Court for Cecil County. The question presented on this further appeal by the Employer and Insurer is whether the court erred in holding that under exceptions to the "going and coming" rule [1] the injuries and death arose out of and in the course of employment of the three men in accordance with the requirements of the Workmen's Compensation Act, Art. 101, Maryland Code Annot., § 15 (1975 Cum. Supp.).

I

The claims of the two survivors and that of the widow of the decedent were consolidated. The pertinent facts as

---

[1]. Employees who suffer injuries while going to and returning from their places of work are generally excluded from the benefits of the Workmen's Compensation Act. Stoskin v. Board of Education, 11 Md. App. 355, 274 A. 2d 397 (1971), citing Salomon v. Springfield Hospital, 250 Md. 150, 242 A. 2d 126 (1967).

contained in the record before the Workmen's Compensation Commission received into evidence below and in testimony before the Circuit Court are these: The claimants, Franklin Jones and Robert Wilson, and the decedent, Arthur Brewer, were employed by the Wiley Manufacturing Company, a steel fabricator and medium-sized shipyard at Port Deposit, Maryland. As shown on the plat submitted in evidence and appended to this opinion, the plant is enclosed by a ten foot fence and is situated along the main line tracks of the Penn Central Railroad which run in a north-south direction. The entrance to the plant is on Ferry Street which crosses the railroad tracks and dead-ends at the plant entrance. At that location there are the customary railroad warning devices for vehicular and pedestrian traffic.

The Wiley Company had a total work force of approximately 350 men, on two shifts. It maintained employee parking lots, one of which was designated "North Parking Lot," and was located approximately 790 feet north of the plant entrance, abutting Main Street. Street access to this parking lot was by way of Ferry Street and Main Street. Somewhat shorter access was by way of the Penn Central Railroad tracks. The lot was not fenced.

Approximately 30 trains — mostly freight — used the tracks daily, some consisting of as many as 100 cars. Between 50 and 100 men walked the tracks every day to the North Parking Lot and most continued to do so even after the accident.

Franklin Jones and the decedent, Arthur Brewer, were employed as welders. Mr. Wilson was a shipfitter, first class. On March 21, 1974 their work day began at 7:30 a.m. when they were released from work at 1-1:30 a.m. They punched inside the plant entrance. Because of inclement weather they were released from work at -1:30 a.m. They punched out at the time shack at that time, and by prearrangement, they were to ride home together in Mr. Jones' car which he had parked in the North Parking Lot. Instead of walking to the parking lot by way of Ferry Street and Main Street, they made their way north along the main line Penn Central

Railroad tracks. (Jones had been using the tracks for five years and Wilson more than ten.) A train was stopped on the southbound track with its engines running. After the men had been walking a short time and had travelled approximately 350 feet from the time shack, they were struck from the rear by a train on the northbound track. The survivors said that because of the noise from the southbound train they had not become aware of the approaching northbound train.

Employees of Wiley Manufacturing Company were paid only from the time they punched in until the time they punched out and were free to choose their own means of transportation and, of course, their route to and from work. The parking lot was a "fringe benefit". The company did not own the property on which the railroad tracks were located and exercised no control over it. After the accident in this case warnings were issued by the company against the use of the tracks by the workers. These consisted of verbal admonitions by a guard stationed at the public crossing as well as printed statements in pay envelopes that the employees were forbidden by law to trespass on the railroad property. Prior to the accident the workers had never been advised or instructed by management not to use the tracks. There was, however, a posted notice of Penn Central that "All persons are forbidden to enter, cross over or trespass upon this property, under the penalty provided by law."

The lower court, in a detailed written opinion, rejected the contentions of the Employer and Insurer that the injuries and death did not arise out of and in the course of employment. Rather, the court held:

> "At the time of the accident the claimants were in close proximity to the employer's plant between the plant and the parking lot maintained by the employer at an appropriate time on a route customarily used by other employees, which was a direct and convenient way of ingress or egress to the plant from the parking lot, and used by said employees with the implied consent of the

employer. *Therefore, this case falls within the exceptions to the general rule and the injuries sustained by the claimants are compensable."* (Emphasis added.)

## II

The "exceptions" to the general going and coming rule recognized in Maryland and to which the lower court referred are the "proximity rule" and the "premises rule".

The elements of the "proximity rule" were defined by Chief Judge Murphy in *Stoskin v. Board of Education of Montgomery County,* 11 Md. App. 355, 274 A. 2d 397 (1971), *supra,* n.1. Upon the authority of *Maryland Paper Products Company v. Judson,* 215 Md. 577, 139 A. 2d 219 (1958) citing 8 Schneider, *Workmen's Compensation,* § 1724 (1951) and *Pariser Bakery v. Koontz,* 239 Md. 586, 212 A. 2d 324 (1965), the proximity rule was explained in *Stoskin* to mean that an employee is in the course of his employment while coming to *or* going from his work when, although off the actual premises of his employer, the employee is:

(1) In close proximity to the premises;
(2) Proceeding diligently at an appropriate time by reasonable means;
(3) Using the natural, practical, customary, convenient and recognized way of ingress or egress;
(4) Traversing land under the control of the employer, or on adjacent property with the express or implied consent of the employer.

The Court in *Stoskin* also observed that the rule, as analyzed in *Pariser Bakery, supra,* "allows compensation for an injury to an employee when, under the special facts of the case, the employment itself involved peculiar and abnormal exposure to a common peril which is annexed as a risk incident to the employment."

The rule was held to be unavailing in *Pariser Bakery* where the employee, a dough mixer, had completed his work,

dressed in the locker room and punched his time card. He then walked outside and was struck on the sidewalk, about seven feet beyond the building line, by an automobile out of control. Judge Marbury stated that, "[t]o allow recovery under the facts presented in this case would convert the proximity rule into a general rule applying to any street upon which a business might front." 239 Md. at 591.

Application of the proximity rule was also withheld in *Stoskin, supra,* where the appellant, a school teacher, was being driven to work by a friend. When she arrived outside the school grounds, carrying an armful of school books, she was injured as she alighted from the vehicle and stepped on a Coca Cola bottle which rolled out of the car and landed beneath her feet. She slipped and fell within the public right of way. This Court held that the lower court correctly decided that the proximity rule did not apply because the claimant was not by reason of her proximity to the school subjected to any special danger different from that to which the general public was subjected.

On the other hand, in *Pappas v. Modern Manufacturing Co.,* 14 Md. App. 529, 287 A. 2d 798 (1972) a lower court holding that the proximity rule was inapplicable was reversed. There, the employee slipped on some ice and fell, fracturing her right arm, while she was still on a parking lot provided by the employer and where access to the building where she worked was by way of a ten foot alley between the building and the parking lot. Writing for this Court, Judge Anderson stated that the case was controlled by the holding of the Court of Appeals in *Proctor-Silex v. DeBrick,* 253 Md. 477, 252 A. 2d 800 (1969), *infra.*

The "premises rule", also a creature of case law, is designed to allow compensation for injuries sustained before or after actual working hours while on the premises of the employer and/or under an extension of the literal concept of "premises".[2] Larson, *supra,* § 15.12; *Salomon v. Springfield Hospital,* 250 Md. 150, 242 A. 2d 126 (1968); *Proctor-Silex*

---

2. The general meaning of "premises" is discussed in Larson, *supra,* § 15.41.

*Corp. v. DeBrick, supra; Saylor v. Black & Decker Manufacturing Co.*, 258 Md. 605, 267 A. 2d 81 (1970).

Speaking for the Court of Appeals in *Salomon, supra*, Judge Marbury articulated the "premises rule" in the following context:

> "... we recognize that ordinarily an employee who has arrived *on his employer's premises* as usual, in preparation for beginning his day's work, is considered to be *on the premises* and therefore covered by workmen's compensation *even though his actual employment has not begun....*" 250 Md. at 155. (Emphasis added.)

And in *Proctor-Silex, supra*, where an employer's parking lot in Baltimore County was located across Coolidge Avenue from the employer's plant and the employee was injured when she slipped and fell as she was crossing from the parking lot to the building in which she was employed, the injuries were held to be compensable. In a comprehensive opinion reviewing Maryland cases and leading cases in other jurisdictions principally involving the subject of "premises", Judge Smith quoted from Larson, *op. cit., supra*, § 15.41, with respect to parking lots:

> "As to parking lots owned by the employer, or maintained by the employer for his employees, the great majority of jurisdictions consider them *part of the premises* whether within the main company premises or separated from it." (Emphasis added.) [3]

Maryland follows the majority rule. *Giant Food v. Gooch*, 245 Md. 160, 225 A. 2d 431 (1967); *Smith v. General Motors Assembly Division*, 18 Md. App. 478, 307 A. 2d 725 (1973); *Pappas v. Modern Mfg. Co, supra*.

Travel between two parts of an employer's premises, the subject fundamentally involved in this appeal as it was in

---

**3.** Larson thereafter states, § 15.41 at 4-47, that, "Once a parking lot has achieved ... the status of a portion of the employer's premises, compensation coverage attaches to any injury that would be compensable on the main premises."

*Proctor-Silex,* is the subject of a *general* rule enunciated in Larson, § 15.14 also quoted by Judge Smith:

"One category in which compensation is almost always awarded is that in which the employee travels along or across a public road between two portions of his employer's premises, whether going and coming, or pursuing his active duties.

"Since, as shown later, a parking lot owned or maintained by the employer is treated by most courts as part of the premises, *the majority rule is that an injury in a public street or other off-premises place between the plant and the parking lot is in the course of employment, being on a necessary route between the two portions of the premises.* But if the parking lot is a purely private one, the principle of passage between two parts of the premises is not available, and an employee crossing a public street to get to the parking lot is not protected." 253 Md. at 482, 483. (Emphasis in *Proctor-Silex.*)

As we read *Proctor-Silex,* Judge Smith found it unnecessary to make a precise application of either the "proximity rule" or the "premises rule" in finding the injuries compensable. The narrow holding there — found by this Court to be controlling in *Pappas, supra* — was as follows:

"Where, as here, the claimant had arrived on the premises of her employer and was proceeding *without deviation of any kind* directly to her work, it would be unreasonable to hold that injuries sustained by her on the parking lot or between the building entrance and the time clock would be compensable, but injuries sustained between the parking lot and the building entrance would not be compensable. Therefore, we hold the injuries sustained by [claimant] to have arisen out of and in the course of her employment." At 489. (Emphasis added.)

The decision in *Proctor-Silex*, while illuminating the issues involved in the instant appeal, is not here of controlling effect as in *Pappas*. In *Proctor-Silex*, there was only one means of access to the plant from the parking lot; and this was also the situation in *Pappas*. The crucial question in the instant appeal is whether the use by the three men of the Penn Central tracks, rather than the available public streets, constituted the use of an off-premises place between the plant and the parking lot such as to render the injuries and death non-compensable. On this issue, under similar facts, there is no direct Maryland authority, and we look elsewhere for precedential guidance.

### III

The Supreme Court of the United States has had occasion in two leading cases to rule on the compensability of injuries sustained on railroad tracks near the employees' places of employment. *Cudahy Co. v. Parramore*, 263 U. S. 418 (1923); *Bountiful Brick Co. v. Giles*, 276 U. S. 154 (1928). In both of these cases Mr. Justice Sutherland, writing for the Court, upheld the Workmen's Compensation Act of Utah as not violating the Due Process Clause of the Fourteenth Amendment.

In *Parramore*, the claimant's only route to the plant in which he worked was across the tracks of the Rio Grande Western. His auto was struck by a train and he was killed seven minutes before he was to begin his work as an engineer. The Court affirmed an award of compensation, without reference to the "going and coming" concept but with emphasis upon the hazard attendant upon ingress and egress:

> "Here the location of the plant was at a place so situated as to make the customary and only practicable way of immediate ingress and egress one of hazard. Parramore could not, at the point of the accident, select his way. He had no other choice than to go over the railway tracks in order to get to

his work; and he was in effect invited by his employer to do so. And this he was obliged to do regularly and continuously as a necessary concomitant of his employment, resulting in a degree of exposure to the common risk beyond that to which the general public was subjected." 263 U. S. at 426.

Mr. Justice Sutherland's statement concerning claimant's inability to reach the plant via another route would, standing alone, seem to preclude compensation in the case before us. In *Giles*, however, on facts not dissimilar to those presented here, the *Parramore* decision was extended when the Court affirmed an award of compensation to a worker who was killed as he took a short cut along the right of way of the Bamberger Electric Railroad.

The opinion in *Giles* makes it clear that the employer was quite aware of, and did not object to, its employees' usual selection of the short cut in preference to the "long, circuitous and inconvenient" alternate route. 276 U. S. at 157. Mr. Justice Sutherland acknowledged that *Giles* "comes nearer the border line" of compensability than *Parramore*, but held that it nonetheless "falls within the principle of the *Parramore* case." At 159. In addressing the issues of an employer's implied consent to its employees' choice of an unsafe route and of the significance, if any, of the employees' status as trespassers upon the railroad's right of way, the following language is particularly instructive:

"Since the only way of access to its brickyard from the east was across the railway tracks, the company necessarily contemplated the crossing of them by its employees. No definite line of travel being indicated by the company or followed by the employees, who, with the company's full knowledge and acquiescence, habitually crossed wherever they saw fit, it results that, however the crossing was made, the risk thereby incurred was reasonably incidental to the employment and became annexed as an implied term thereof. *If it were necessary to*

*strengthen the implication of consent on the part of the company to the crossing by any way its employees chose to take, it would be enough to refer to the testimony of the manager, who, knowing of the practice, did not forbid it, but in effect approved it by warning Giles simply to be careful.*

*It is said that Giles was a trespasser upon the railroad right of way; but if that be established by the evidence,* the answer is that, if *the company,* not being the owner, could under any circumstances defend upon that ground (*Daltry v. Electric Light Co.,* 208 Pa. 403, 411-412), it *cannot avail itself of the defense here because it consented to the trespass.* " At 159. (Emphasis added.)

Dean Larson notes that both of the above cases dealt with the Utah act, which, unlike the compensation acts of Maryland and most other states, provided compensation for employees whose accidental injuries arise out of *or* in the course of employment. *See,* Larson, § 15.13 where the author states:

"It is quite possible to argue [as does appellant in the instant appeal] that the real issue therefore went no further than 'arising out of ' employment, which is easier to prove here than 'course of employment.' However, the language and tone of the decisions leave no doubt where the Supreme Court stands on the issue even if it should arise under the usual conjunctive coverage clause."

And, as the Kansas City Court of Appeals observed in *Hunt v. Allis-Chalmers Mfg. Co.,* 445 S.W.2d 400, 408-9 (Mo. App. 1969), a case involving facts remarkably similar to those before us here:

"We cannot conceive that a different result would have been reached in those cases had the Utah law used the conjunctive wording [as in Maryland] rather than the disjunctive which was in fact used."

In the *Hunt* case, a Missouri Pacific right of way

separated an Allis-Chalmers plant from another firm's parking lot. Allis-Chalmers' employees were permitted t. use that lot and many of them did so. From the lot to the plant there were two routes — one directly across the unprotected right of way and into the plant and the other down an alley to a public street and thence across the tracks at an intersection protected by an automatic arm, bell and light signal device. The Court described the latter route as "longer, more circuitous and less convenient" and observed, from photographic exhibits, that "a well defined path . . . had been worn along [the short] route from the lot to the employer's physical plant." 445 S.W.2d at 404. Hunt was killed while crossing the tracks on the less safe shorter route. The Court noted the similarity of Hunt's claim to *Giles*:

> "[W]hether Mr. Hunt had chosen to use the church parking lot or the one he actually used, he was still required to cross railroad tracks adjacent to and in some proximity to the employer's premises and expose himself, recurrently, to its hazard. *As in Giles, a more circuitous and less convenient alternate route across the tracks was available. Also, as in Giles, Hunt's employer, through its manager Scott, had knowledge of the practice of crossing the tracks at the two locations. Neither Hunt nor other employees were forbidden either to use the Stove Company parking lot, or to cross the right-of-way and tracks from that lot to and from work, although both practices had been known to the employer for several years.* In fact, the very customary route used by the employees from that lot to the plant had also been known to the employer." At 407. (Emphasis added.)

In concluding that Hunt's death was compensable the Court stated:

> "*[W]e rely particularly on the rationale of the Giles case and others of like import.* Under the particular facts of the case before us, we extend the

off-premises rule to encompass the hazards of the railroad crossing which Hunt encountered while going to and returning from work as risks incident to the employment. The crossing was adjacent to the employer's premises, and when used as an access route by its employees, an extension of them. We acknowledge the availability of an alternate and perhaps safer route from the Stove Company parking lot to the plant. We are not to be understood as holding that the existence of such an alternate route may not, under the proper circumstances, be a factor to be considered in determining whether the accident arose out of and in the course of employment. . . . *We do hold that the existence and use of the Stove Company parking lot was known to and acquiesced in by the employer for several years.* Its very location at the south edge of the right-of-way directed the use to be made of the adjoining tracks as a convenient route of access to the employer's premises. *The practice of crossing there was also of long standing, known by the employer for some time but was permitted to continue without remonstrance.*" At 410. (Emphasis added.)

Other cases adopting *Giles* to support awards of compensation in somewhat similar circumstances include *Johannsen v. Acton Construction Co.*, 119 N.W.2d 826 (Minn. 1963); *Basinski v. Detroit Steel Corp.*, 64 A. 2d 459 (N. J. App. Div. 1949); *Daly v. Edwards Engineering Corp.*, 257 A. 2d 730 (N. J. App. Div. 1969), aff'd 257 A. 2d 697 (N. J. 1969); and *Reed v. Brown*, 152 N.E.2d 257 (Ind. App. 1958).

In *Johannsen* construction workers chose to walk a short distance from their job site across railroad tracks to a luncheonette rather than take a longer route on city streets which would have afforded them a protected crossing. The Court, said, citing *Giles*:

"[The option] is not of great significance when viewed in the light of the facts of the case . . . for

the [route taken] was used regularly and customarily by the employees in going to and from the place where the work was being done." 119 N.W.2d at 830.

*Basinski* involved a claimant who customarily walked from the plant where she worked along a route which took her across the tracks of the Delaware, Lackawanna and Western. The employer argued that her route was unauthorized and that her injuries, sustained when she tripped on a switch, were therefore not compensable. Judge Jacobs, later a Justice of the New Jersey Supreme Court, affirmed the compensation bureau's award of compensation largely because claimant and other employees had used that route "openly and continually . . . over a long period of time and . . . no objection whatever had been voiced." 64 A. 2d at 460.

In *Daly* an employee was injured while driving his automobile across the tracks of the Erie Railroad adjacent to his employer's premises. An alternate route avoiding the tracks was available to him. Citing, *inter alia, Giles, Basinski,* and *Johannsen,* the the court stated that:

"the fact that there may have existed an alternate means of ingress or egress to or from the employer's plant, other than the one chosen by the employee, does not of itself bar petitioner from compensation." 257 A. 2d at 732.

In affirming the compensation award below the court in *Daly* observed that the employer "never gave its employees any specific oral or written instructions as to which route they should use nor did it prohibit the use of [the route on which the accident occurred]." At 733.

*Reed v. Brown* concerned an employee who went home for lunch from his job at an orchard. On his return trip, while crossing the railroad tracks next to the orchard he was struck by a locomotive and killed. The employer argued that he could have crossed the tracks at a protected intersection and was therefore not entitled to compensation. The court

ruled otherwise and, after quoting at length from *Giles*, noted that:

"[t]here [was] no stipulation or evidence that [the employer] had ever notified or warned decedent that he should not use this particular route nor that they suggested to him that he should use the other route." 152 N.E.2d at 263.

Cases where compensation was not awarded are also instructive. *See, e.g., Corcoran v. Fitzgerald,* 58 N.W.2d 744 (Minn. 1953) and *Drouin v. Chelsea Silk Co.,* 187 A. 904 (Conn. 1936). In *Corcoran* the employee fell while climbing a ten foot fence. He was attempting to save himself a walk to an open gate in the fence. Justice Knutson, who later as Chief Justice wrote the opinion in *Johannsen, supra,* stated that:

"where an employer does furnish a safe means of ingress and egress and the employe, for his own convenience, chooses not to use it but, instead, selects a more hazardous means of leaving the premises, *not customarily used by employes*, he steps outside the scope of his employment and it cannot then be said that an injury which he sustains while so leaving the premises arises out of his employment." 58 N.W.2d at 746. (Emphasis added.)

The decision of the Supreme Court of Errors of Connecticut in *Drouin* reinstating the finding of the Compensation Commissioner that an award be denied, is especially noteworthy for its disclosure of the efforts made by the employer (and also the railroad) to keep employees from crossing the tracks by a route nonetheless customarily used. There the Chelsea Silk Co. was adjacent to the New York, New Haven & Hartford Railroad's tracks in Mystic. Claimant's decedent resided on a street which ended on the opposite side of the tracks.[4] While crossing the tracks he was

---

4. We note that the decedent was not traveling between portions of the employer's premises, as here, but was enroute to his home.

struck by a train and killed. He could safely have taken a public highway bridge over the tracks, a route which was about five times longer than the fatal short cut. According to the opinion, "People living in the vicinity of [decedent's] street and working in factories south of the railroad had been in the habit of crossing the tracks at the place where the decedent was killed." 187 A. at 905. The vital question, determinative of the appeal, was whether, as held by the lower court, the facts did not support the conclusion of the Commissioner that the decedent at the time of his death

(1) "[W]as not in a place where he had any right to be in connection with his employment *by consent of his employer either express or implied;*"

(2) "[T]hat the hazard of crossing the railroad tracks was not annexed to his employment *by consent, acquiescence or agreement of his employer;*" and

(3) "[T]hat, on the contrary, he was in the act of trespassing on railroad property contrary to warning by both the railroad company and by the [employer], and that his death did not therefore arise out of and in the course of his employment." At 905. (Emphasis added.)

The Commissioner's findings were held to be fully warranted and conforming to law. The court first described efforts made by the railroad to stop individuals from using its tracks. These included posting "no trespassing" signs,[5] the erection of a stone wall with a wire mesh fence atop it, using detectives to warn trespassers, and sending notice to the employer that its employees were engaged in the hazardous practice and that the railroad disclaimed liability should an accident ensue. Concerning the efforts of the

---

5. As noted, *supra,* the Penn Central had posted "no trespassing" signs at one or more points along its right-of-way but they would not serve to protect appellant-employer from liability for compensation, as explained by Justice Sutherland in Parramore, *supra.*

employer to prevent the use of the tracks, the court observed:

> "*The defendant employer had tried to keep its employees from crossing there by posting this notice in its factory,* together with a warning of the danger of crossing, *disclaiming any responsibility resulting therefrom, and expressly forbidding its employees to cross.* These notices were conspicuously posted on the employees' bulletin board in the factory from 1933 through the entire period of the decedent's employment up to and including the day of his death. Furthermore, at various times the employees had been given notice personally not to cross the tracks." At 906. (Emphasis added.)

On the authority of *Giles* and of previously decided Connecticut cases, the rule of law applied in *Drouin* was that to render an employer liable for compensation for injuries sustained "outside of the premises," resulting from some peculiar danger involved in going or coming, it must be shown that such danger

> ". . . was a risk annexed to the employment by the employer's contemplating and acquiescing in the use thereof by the employee." At 906.

In the instant appeal, the employer issued no warnings to the workers until *after* the unfortunate accident and was fully aware that as much as 30 per cent of the total work force was using the tracks on a daily basis.

Appellants cite several cases in support of their contention that customary use of the dangerous route is a bar to compensation. We find them either distinguishable or inapposite.

In *Christian v. Chicago & Illinois Midland R. Co.*, 105 N.E.2d 741 (Ill. 1952) the court ruled that the Illinois Workmen's Compensation Act did not bar plaintiff's action in tort against a railroad where employees of the Peabody Coal Company were killed in an accident while enroute home after leaving their employer's premises.

In *Draper v. Railway Accessories Co.,* 189 S.W.2d 934 (Ky. 1945) no mention was made of *Giles.* Indeed, as far as we can determine, the only Kentucky opinion in which *Giles* has been cited is *Gray v. Congleton,* 93 S.W.2d 829, 830 (Ky. 1936) where it is used in collateral support of the truism that "[n]o exact formula can be laid down which will automatically solve every case."

Draper, whose job was dismantling worn out railroad cars for salvage, was struck by a locomotive while walking home. The site of the accident was a section of the railroad yard removed from his duty station. While we cannot say with certainty that such accident would be compensable in Maryland, *(see, Salomon v. State, supra)* we note that *Draper* is cited by the Kentucky Court of Appeals in support of the statement:

> "[W]e have not adopted the ... rule *(which generally prevails)* that the employee is automatically covered simply because the accident occurred on the employer's premises."

*Ratliff v. Epling,* 401 S.W.2d 43, 44 (Ky. 1966). (Emphasis added.) Because Maryland follows "the rule which generally prevails," at least to a greater extent than Kentucky, *Proctor-Silex Corp. v. DeBrick* and *Saylor v. Black & Decker Mfg. Co.,* both *supra,* we are not persuaded that *Draper* is apposite here.

*Williams v. Compensation Commissioner,* 20 S.E.2d 116 (W. Va. 1942) represents a minority view. *Giles* was again not considered. Williams was a coal miner and lived in a house not owned by his employer, some 2 or 3 miles from his place of employment. He was taking a short cut home through a railroad tunnel and was three-fourths of a mile from the site of his job when he was struck by a train. The decision of an Appeal Board awarding compensation was reversed. The evidence showed that Williams had used the tunnel for about nine years in going to and from work and that "practically all of his fellow workmen did likewise without objection or warning from either the coal company [employer] or the railway company." At 117. It is apparent

from the decision of the Supreme Court of Appeals of West Virginia that, under the law applicable in that State, the provisions of the contract of employment are of over-riding importance. Thus, the Court in *Williams* distinguishes a case where, on similar facts, compensation was allowed, stating at 117:

> "The written contract of employment required him [the successful claimant] to live in a company house, which was expressly agreed therein to be a part of the employer's 'plant and equipment' and the occupation of which by the employee was made 'incidental' to his employment."

With respect to Mr. Williams, it was observed:

> "In the present case . . . the claimant did not live in a company house and, of course, did not have any such contract; . . . . "

In *Dent v. Ford Motor Co.*, 265 N.W. 518 (Mich. 1936), upon which appellants also rely, the court reversed an award of compensation to an employee who slipped on the tracks in the street near his employer's gate. The stated reason for reversal was that "the accident happened on a public street [and] . . . [d]efendant was not master, in any sense, of plaintiff's movements upon [that] street." At 519. *Giles* was nowhere mentioned. The viability of *Dent* in Michigan is at best open to question. *See, Stark v. L. E. Myers Co.*, 228 N.W.2d 411, 413 (Mich. App. 1975).

We are satisfied that *Giles* provides sound guidance in the instant appeal and that cases such as *Dent, Draper* and others cited by appellants which were decided prior to *Giles* are of little import here.

We are not unaware of the statement in Larson, § 15.13, that:

> "if a reasonably safe and convenient route is available, and if the employee chooses a sub-stantially more dangerous route, the exception [to the going and coming rule] will usually not be applied [thus denying compensation]. *A typical*

*example is walking along a railroad right-of-way instead of a road.*" (Emphasis added.) (At 4-18, 19).

He there cites *Collier v. B. F. Goodrich*, 104 N.E.2d 600 (Ohio App. 1950) where, on facts similar to those before us now, compensation was denied. Oddly, the court declined to follow *Giles* for the stated reason that:

> "the Supreme Court of Ohio . . . has not permitted a right of recovery under facts similar to those which confront this court in the instant case." At 601, 602.

(We are unable to account for the absence of any reference to *Giles* in Larson's above citation to Collier, particularly in view of the somewhat extended treatment he affords it earlier in § 15.13 at 4-7 through 11).

It is our conclusion, under the rationale of *Giles* and its progeny of state cases, that workmen's compensation may properly be awarded as arising out of and in the course of employment where, as here, the injuries were sustained between two separate portions of the employer's premises on a means of egress more convenient but less safe than an available public street and where the evidence shows that the use of such egress was common, continued over a substantial period of time, and was neither forbidden nor warned against by the employer prior to the occurrence.

*Judgment affirmed; costs to be paid by appellants.*

| QUAN. | MAT | ALT. | DESCRIPTION |
|-------|-----|------|-------------|
|       |     |      |             |

NORTH PARKING LOT
131' x 161'

FERRY ST.

202'

PLANT MAIN ENTRANCE

ARE APPROXIMATE

FEB 11 1975

IUFACTURING COMPANY
POSIT, MARYLAND U.S.A.

| | DRAWN SS | ALT |
|---|---|---|
| 38-L-103 | | C |