## WILEY MANUFACTURING COMPANY ET AL. *v.* ROBERT LESLIE WILSON ET AL.

[No. 21, September Term, 1976.]

*Decided April 27, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Theodore B. Cornblatt* and *Alfred M. Porth,* with whom were *Smith, Somerville & Case* on the brief, for appellants.

*A. Harold DuBois,* with whom were *Verderaime & DuBois, P.A., A. Freeborn Brown* and *Brown, Brown & Lanahan* and *Stanley Getz* on the brief, for appellees.

LEVINE, J., delivered the opinion of the Court.

We granted certiorari in this case to decide whether the injuries sustained by two co-workers while taking a shortcut along a railroad right of way to a company parking lot, located some 790 feet from the entrance to their place of employment, arose "out of and in the course of" their employment within the meaning of the Workmen's Compensation Act, Maryland Code (1957, 1964 Repl. Vol., 1976 Cum. Supp.) Art. 101, § 15.[1] The Circuit Court for Cecil County (Roney, J.) upheld awards granted the claimants by the Workmen's Compensation Commission, and the Court of Special Appeals, in a carefully considered opinion affirmed in *Wiley Mfg. Co. v. Wilson,* 30 Md. App. 87, 351 A. 2d 487 (1976). We affirm.

On March 21, 1974, at 7:30 a.m., appellees, Robert Leslie Wilson, a shipfitter, and Franklin LeRoy Jones, a welder, arrived for work at the steel fabricating plant and shipyard maintained by appellant Wiley Manufacturing Company, their employer, at Port Deposit, Maryland. Because of inclement weather, they were released for the day at approximately 11:30 a.m. They "punched out" at the "time shack" and, joined by Arthur Allen Brewer and some other

---

1. A third employee, Arthur Allen Brewer, was fatally injured, but that claim, having been settled pending this appeal, is not before us.

employees, proceeded to walk up the main line tracks of the Penn Central Railroad in the direction of the "north parking lot," where Jones, who was planning to drive Wilson to his home, had parked his car earlier that morning. While walking along the tracks, they and Brewer were struck from the rear by a northbound train, and sustained the injuries leading to the workmen's compensation claims which culminated in this appeal.

The physical facts necessary to an understanding of this case are best demonstrated by a plat admitted in evidence as an exhibit, which we have attached as an appendix to this opinion. The Penn Central Railroad tracks run generally in a north-south direction alongside the Wiley plant. Access to the plant is gained at a public crossing directly in front of the main entrance, which lies at the foot of Ferry Street. Traditional grade-crossing signals are located at that point. The time shack is located just in front of the plant entrance. Ferry Street extends easterly from the plant entrance for a distance of 202 feet to Main Street, which parallels the railroad track. The entrances to the north parking lot, one of two maintained by Wiley for its employees, are on Main Street. The plant itself is surrounded by a 10-foot fence, but the north parking lot is not enclosed.

Testimony revealed that the Wiley Company employed approximately 350 men on two shifts. Every day prior to the accident, between 50 and 100 of them took the shortcut to the north parking lot by walking the entire 790-foot distance along the railroad tracks. This amount of pedestrian traffic remained virtually undiminished following the accident, despite the company's subsequent attempts to warn and discourage employees from walking on the railroad right of way. None of these efforts were made prior to the accident, although the company had been aware for several years of the use of the tracks by its employees. Approximately 30 trains, all but a few of which hauled freight, used the tracks on a daily basis. Some of these trains included 100 cars or more.

After being released from work on the day of the accident, Wilson and Jones departed from the time shack and headed

for the north parking lot by proceeding along the Penn Central tracks, as was their custom, instead of walking up Ferry Street to Main Street and then to the parking lot. While they were doing so, a train was stopped on the southbound track. When the northbound train approached, it began sounding a warning signal while some 100 yards south of the crossing. At least one of the other employees heard the signal and leaped to safety, but appellees did not, apparently because of the noise created by the stationary train on the southbound track, and were therefore struck from the rear at a point some 350 feet north of the time shack.

Employees of Wiley Manufacturing are paid until such time as they "punch out" at the time shack. Beginning at that point they are no longer under the control or supervision of their employer, particularly in regard to their route of travel or mode of transportation. The railroad tracks are owned by Penn Central and the two parking lots are maintained by Wiley as a "fringe benefit" for the convenience of the employees. The only direct testimony of the comparative distances between the time shack and the north parking lot was provided by the plant safety manager, who testified that the route along the tracks was only some 25 feet shorter than that along Ferry and Main Streets and that this distance might have been even less, depending upon the particular location of an automobile on the parking lot.[2]

In upholding the ruling of the Workmen's Compensation Commission, the circuit court rejected the contention advanced by the employer and insurer that the injuries did

---

2. Although there was no other direct testimony of the comparative distances, it would appear from a cursory glance at the plat, which is not drawn according to scale, that depending on whether an employee parked his car on the lot closer to the railroad tracks or closer to Main Street, the route along Ferry and Main Streets may have exceeded the railroad route in distance by more than 25 feet. Presumably, employees planning to use the street route would park as close to Main Street as they could, while those intending to walk along the tracks would park to the rear of the lot.

not arise "out of and in the course of" employment, as required by the statute, saying:

"In the absence of any action by the employer to discourage or prevent its employees from using the route along the railroad tracks to reach its parking lot, the employer impliedly consented to its use by its employees, and it being the natural or most direct way as well as the practical, customary, convenient and recognized way of ingress and egress, this case falls within the *proximity rule* exception to the general going and coming rule and the injuries sustained by the claimants in this case are compensable." (Emphasis added).

The Court of Special Appeals affirmed, and speaking through Judge Moore concluded that:

". . . [W]orkmen's compensation may properly be awarded as arising out of and in the course of employment where, as here, the injuries were sustained between two separate portions of the employer's premises on a means of egress more convenient but less safe than an available public street and where the evidence shows that the use of such egress was common, continued over a substantial period of. time, and was neither forbidden nor warned against by the employer prior to the occurrence." 30 Md. App. at 106.

We noted at the outset that the question here is whether the injuries sustained by the employees arose "out of and in the course of" their employment within the meaning of Art. 101, § 15. This statutory standard has been the subject of frequent judicial interpretation throughout the history of the workmen's compensation law. As we have said on numerous occasions, the words "out of" refer to the cause or origin of the accident, while the words "in the course of" relate to the time, place and circumstances under which it occurs. *Proctor-Silex v. DeBrick*, 253 Md. 477, 480, 252 A. 2d 800 (1969); *Dep't of Correction v. Harris*, 232 Md. 180, 183,

192 A. 2d 479 (1963). We are concerned here with the "course of employment" requirement, which "demands that the injury be shown to have arisen within the time and space boundaries of the employment, and in the course of an activity whose purpose is related to the employment." 1 Larson, Law of Workmen's Compensation § 14.00 (1972).

In common with most other courts throughout the country, we have adopted the general rule that injuries received by an employee while going to or returning from his place of employment (the "going and coming rule") do not arise "out of and in the course of" employment, and therefore are not compensable under the Workmen's Compensation Act. *Dir. of Finance v. Alford*, 270 Md. 355, 359-60, 311 A. 2d 412 (1973); *Saylor v. Black & Decker Mfg. Co.*, 258 Md. 605, 607-608, 267 A. 2d 81 (1970); *Tavel v. Bechtel Corporation*, 242 Md. 299, 303, 219 A. 2d 43 (1966). The reason for the rule is that the workmen's compensation law contemplates an employee engaged in a service growing out of his employment. An employee who is merely going to or coming from his work is not rendering any such service. He is therefore exposed to the hazards encountered on such trips, not as an employee, but rather as a member of the general public. *Tavel v. Bechtel Corporation*, 242 Md. at 303; *Rumple v. Henry H. Meyer Co., Inc.*, 208 Md. 350, 357, 118 A. 2d 486 (1955).

By judicial decision, several well-established exceptions have been engrafted upon the "going and coming" rule. Here, the employees rely upon two such exceptions. The first, sometimes called the "premises" exception, is usually invoked where the employee is injured while traveling along or across a public road between two portions of his employer's premises, whether going or coming, or pursuing the actual duties of his employment. A typical application of this exception occurs where injury is sustained by an employee while traveling between a company parking lot and his employer's plant:

> "Since . . . a parking lot owned or maintained by the employer is treated by most courts as part of

the premises, the majority rule is that an injury in a public street or other off-premises place between the plant and the parking lot is in the course of employment, being on a *necessary* route between the two portions of the premises. . . ." 1 Larson, *supra* at § 15.14 (emphasis added, footnotes omitted).

The cases throughout the country, therefore, apply the "premises" exception not only where injuries are sustained on the employer-maintained parking lot itself,[3] but also where the accident occurs between the parking lot and the plant or actual place of employment.[4] We applied the "premises" exception in *Proctor-Silex v. DeBrick*, 253 Md. 477, where an employee, while walking from a company-maintained parking lot to the plant located across the street, slipped and fell on an icy sidewalk in front of the plant. Judge Smith there said for the Court:

"Where, as here, the claimant had arrived on the premises of her employer and was proceeding

---

3. *See, e.g.*, Saala v. McFarland, 63 Cal. 2d 124, 403 P. 2d 400, 45 Cal. Rptr. 144, 145 (1965); Foust v. Birds Eye Division of General Foods Corp., 91 Idaho 418, 422 P. 2d 616, 617 (1967); Chmelik v. Vana, 31 Ill. 2d 272, 201 N.E.2d 434, 438-39 (1964); Hoyos v. Industrial Commission, 26 Ill. 2d 110, 185 N.E.2d 885, 887 (1962); Harlan Appalachian Regional Hospital v. Taylor, 424 S.W.2d 580, 581 (Ky. 1968); Connolly v. Miron, 353 Mass. 654, 233 N.E.2d 753, 754 (1968); Queen v. General Motors Corporation, 38 Mich. App. 630, 196 N.W.2d 875, 878 (1972); Malinka v. Mugavero, 27 App. Div.2d 691, 276 N.Y.S.2d 941, 942 (1967); Smithline v. Ghessi, 25 App. Div.2d 841, 270 N.Y.S.2d 103, 104, *appeal dismissed*, 276 N.Y.S.2d 631 (1966); American Motors Corporation v. Industrial Comm., 18 Wis. 2d 246, 118 N.W.2d 181, 185 (1962).

4. *See, e.g.*, Ludwig v. Radio Corporation of America, 337 F. Supp. 664, 666 (E.D. Pa. 1972), *aff'd*, 474 F. 2d 1339 (1973); State Compensation Insurance Fund v. Walter, 143 Colo. 549, 354 P. 2d 591, 594 (1960); Fidelity & Casualty Co. of New York v. DeShone, 384 Mich. 686, 187 N.W.2d 215, 217 (1971); Jean v. Chrysler Corporation, 2 Mich. App. 564, 140 N.W.2d 756, 759 (1966); Lewis v. Walter Scott & Co., Inc., 50 N.J. Super. 283, 141 A. 2d 807, 809-10 (App. Div. 1958), *aff'g* 48 N.J. Super. 200, 137 A. 2d 109 (Union County Ct. 1957); Lugo v. Pelican Sportswear, Inc., 38 App. Div.2d 632, 327 N.Y.S.2d 288, 289 (1971) (mem.); Rosenwasser v. Lanes Lake Success, 9 App. Div.2d 1001, 195 N.Y.S.2d 74, 76 (1959); Gaik v. National Aniline Div., Allied Chem. & D. Corp., 5 App. Div.2d 1039, 173 N.Y.S.2d 409, 410 (1958), (mem.), *appeal denied*, 188 N.Y.S.2d 1025 (1959); Swanson v. General Paint Company, 361 P. 2d 842, 845 (Okla. 1961).

without deviation of any kind directly to her work, it would be unreasonable to hold that injuries sustained by her on the parking lot or between the building entrance and the time clock would be compensable, but injuries sustained between the parking lot and the building entrance would not be compensable. . . ." *Id.* at 489.

*Accord, Saylor v. Black & Decker Mfg. Co.,* 258 Md. at 608-11; *see Pappas v. Modern Mfg. Co.,* 14 Md. App. 529, 535, 287 A. 2d 798, *cert. denied,* 265 Md. 741 (1972).

The other exception to the "going and coming" rule relied upon here by the employees is the so-called "proximity" or "special hazard" rule, which, as we indicated earlier, was the explicit basis for the circuit court decision.[5] Succinctly stated, the proximity rule is identified with those cases involving accidents which occur at a point where the employee is within range of dangers peculiarly associated with the employment. 1 Larson, *supra* at § 15.00. This rule, therefore, has two vital components. "The first is the presence of a special hazard at the particular off-premises point. The second is the close association of the access route with the premises, so far as going and coming are concerned." *Id.* at § 15.13.

The "proximity" rule has been considered in several Maryland cases, but with one exception has been found inapplicable to the facts of the particular case in which the rule was being asserted. In *Md. Paper Products Co. v. Judson,* 215 Md. 577, 588, 139 A. 2d 219 (1958), where the employee was struck by an automobile while crossing the

---

5. The circuit court, as did the Court of Special Appeals, implicitly rejected the "premises" exception, presumably because that exception ordinarily is not applied where a question of alternative routes is presented. Moreover, here the route taken along the railroad tracks cannot be described as "necessary." In this connection, appellants concede that the injuries would have been compensable under the Workmen's Compensation Act had they occurred while the employees were walking directly to the parking lot via Ferry and Main Streets. Undoubtedly, they make this concession in recognition of the "premises" exception.

street from his parking place to his employer's plant, we held the "proximity" rule inapplicable, saying:

"... Crossing streets is unfortunately often hazardous but it is a risk which has to be incurred by nearly everyone going back and forth between his home and his place of employment. The Employee in the present case could have selected any place to cross the street that he might choose, and he was exposed to no unusual hazard in crossing. ..."

*Accord, Salomon v. Springfield Hospital,* 250 Md. 150, 154-55, 242 A. 2d 126 (1968) (no recovery where injuries sustained by employee while crossing public highway in her car, even though highway cut through employer's property; "traveling upon and crossing busy streets and highways, while it does entail some degree of danger, does not subject an employee traveling to and from work, to a greater degree of danger than he would be exposed to as a member of the general public."); *Stoskin v. Bd. of Educ. Mont. Co.,* 11 Md. App. 355, 357-58, 274 A. 2d 397 (1971) (proximity rule inapplicable where school teacher on way to work stepped out of friend's car on public street in front of school grounds and slipped on "coke" bottle; risk created by presence of bottle unrelated to proximity of school premises). In *Pariser Bakery v. Koontz,* 239 Md. 586, 591, 212 A. 2d 324 (1965), where compensation was denied a workman who, while walking on the sidewalk in front of his employer's premises, was struck by a vehicle out of control, we said concerning the proximity rule:

"... The gravamen of that rule is not that the employee is in close proximity to his place of employment, but rather that by reason of such proximity the employee is subjected to danger peculiarly or to an abnormal degree beyond that to which the general public was subjected. ..."

*But cf. Pappas v. Modern Mfg. Co.,* 14 Md. App. at 535 (employee injured by fall on employer's parking lot located half-block from plant; proximity rule applied).

The proximity rule appears to have had its genesis in two widely cited Supreme Court cases, *Cudahy Co. v. Parramore*, 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366 (1923), and *Bountiful Brick Co. v. Giles*, 276 U. S. 154, 48 S. Ct. 221, 72 L. Ed. 507 (1928), in both of which it was contended that workmen's compensation awards under the Utah statute violated the due process rights of the employer.[6] Both cases, as have so many involving application of the proximity rule, arose out of railroad-crossing accidents. In *Parramore*, the employee was killed while en route to work when the automobile in which he was a passenger was struck by a locomotive. The road on which the automobile was proceeding when it crossed the railroad tracks was described by the Court as the "only *practicable* way of ingress and egress for employees" and "was the way customarily used." 263 U. S. at 421 (emphasis added). The Court said:

> "Here the location of the plant was at a place so situated as to make the customary and only practicable way of immediate ingress and egress one of hazard. Parramore could not, at the point of the accident, select his way. He had no other choice than to go over the railway tracks in order to get to his work; and he was in effect invited by his employer to do so. And this he was obliged to do regularly and continuously as a necessary concomitant of his employment, resulting in a degree of exposure to the common risk beyond that to which the general public was subjected. . . ." 263 U. S. at 426.

---

6. Unlike the statute in Maryland and in most other states, providing for compensation where injury arises out of *and* in the course of employment, the Utah statute authorized compensation for injury arising out of *or* in the course of employment. The Utah test, therefore, was couched in the disjunctive, and would appear to have circumscribed the scope of *Cudahy Co. v. Parramore*, 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366 (1923) and *Bountiful Brick Co. v. Giles*, 276 U. S. 154, 48 S. Ct. 221, 72 L. Ed. 507 (1928). But, as Professor Larson said, "the language and tone of the decisions leave no doubt where the Supreme Court stands on the issue even if it should arise under the usual conjunctive coverage clause." 1 Larson, Law of Workmen's Compensation § 15.13 (1972); *accord*, Hunt v. Allis-Chalmers Manufacturing Company, 445 S.W.2d 400, 408-409 (Mo. App. 1969).

The Court extended the *Parramore* holding still further in *Giles*. There also, the employee was killed while en route to work when struck by a train, albeit as he was proceeding on foot. But there, although it was also impossible to avoid crossing the railroad tracks, an alternative route via a public crossing, described as long, circuitous and inconvenient, was available and was apparently not used by the employees. Though fully aware of the route taken by the employees, the employer merely cautioned Giles a number of times to be careful and instructed none of the employees to stop using the shortcut. On those facts, the Court upheld an award under the Utah statute, saying:

> ". . . Since the only way of access to its brickyard from the east was across the railway tracks, the company necessarily contemplated the crossing of them by its employees. No definite line of travel being indicated by the company or followed by the employees, who, with the company's full knowledge and acquiescence, habitually crossed wherever they saw fit, it results that, however the crossing was made, the risk thereby incurred was reasonably incidental to the employment and became annexed as an implied term thereof. . . ." *Bountiful Brick Co. v. Giles*, 276 U. S. at 159.

The proximity rule has been invoked on behalf of the injured employee in numerous railroad-crossing cases with mixed results. As this and other courts have uniformly recognized, cases involving the proximity rule and the other exceptions to the "going and coming rule" usually turn on their own individual facts. *Md. Paper Products Co. v. Judson*, 215 Md. at 584. Consequently, no analysis of cases decided in other states can be meaningful without consideration being given to the particular facts involved. Cases tending to support the employees' position here, and on which they rely heavily, are: *Reed v. Brown*, 129 Ind. App. 75, 152 N.E.2d 257 (1958), *Johannsen v. Acton Construction Co.*, 264 Minn. 540, 119 N.W.2d 826 (1963), *Daly v. Edwards Engineering Corp.*, 107 N.J. Super. 183, 257 A.

2d 730, 733 (App. Div.), *aff'd*, 54 N. J. 524, 257 A. 2d 697 (1969), and *Hunt v. Allis-Chalmers Manufacturing Company*, 445 S.W.2d 400 (Mo. App. 1969).

In *Reed*, the employee was fatally injured upon returning from a luncheon break when his automobile was struck by a train as he was within 40 feet of reaching his place of employment. The route taken by the employee was one of two available to him, the selection of either being entirely his to make. The evidence established that the alternative route also crossed the railroad tracks, but at a crossing where a flashing signal was present. The route actually taken, however, was described as quicker, shorter and more convenient. The employer argued primarily that since an alternative route was available which was safer, the employee was barred from recovery. The Indiana court disagreed, however, and, in applying the proximity rule, observed that the employee "was subjected to the risk of a hazard which was incidental to his employment." *Reed v. Brown*, 152 N.E.2d at 263. The route taken by the employee, said the court, "was not generally used by the traveling public." *Id.*

The *Reed* court answered the employer's contention that the employee, in selecting the more dangerous route, had himself created the hazard, which was therefore not incidental to his employment, by saying:

> ". . . It is apparent, therefore, that [the employers] not only acquiesced in [the employee's] use of said way over their land but that they intended that [the employee] was to avail himself thereof, at his own choosing. Under such circumstances, it does not lie in the mouth of [the employers] to now say that there was another way which [the employee] could have used and, since he did not do so, he brought about his own hazard . . . ." 152 N.E.2d at 262.

Similarly, in *Johannsen v. Acton Construction Co.*, 119 N.W.2d 826, the employee was injured while leaving his place of employment on foot for lunch at a nearby restaurant. As he was crossing an adjoining railroad track,

he was struck by a boxcar which he failed to see despite the warnings of his foreman and superintendent who had preceded him across the tracks. Employees had not been forbidden to cross at that point. A public crossing, protected by warning lights, was located 1,073 feet away, and was therefore considered too inconvenient because the employees could not have reached the restaurant in time to eat lunch within the 30 minutes allotted them. The court, quoting *Giles* with approval, applied the proximity rule in upholding an award to the employee.

Met with the argument that the alternative route was safer, the Minnesota court pointed out that the path taken by the injured workman "was used regularly and customarily by the employees in going to and from the place where the work was being done." 119 N.W.2d at 830. The court distinguished a prior case, *Corcoran v. Fitzgerald Bros.*, 239 Minn. 38, 58 N.W.2d 744 (1953), where a newly hired employee, rather than walk a "longer route" of 3½ to four blocks to leave work, attempted to scale a 10-foot wire mesh fence with barbed wire, and fell to the ground with resulting injury. The *Johannsen* court aptly noted the distinction between the two cases:

> ". . . [W]here a safe means of ingress to and egress from the premises is provided by the employer and the employee takes it upon himself to climb over a 10-foot fence *obviously intended to prevent ingress or egress*, he removes himself from the hazards of the employment and assumes a hazard not at all causally connected with the employment. These cases are clearly distinguishable upon both facts and law." 119 N.W.2d at 832 (emphasis added).

The facts regarded as decisive by the court, then, were the customary and regular use of the more dangerous route and the tacit approval of the employer.

A factual situation analogous to that found here was presented in *Hunt v. Allis-Chalmers Manufacturing Company*, 445 S.W.2d 400. There also, the place of employment was separated from a parking lot available to

plant employees by an unprotected railroad right of way. An alternative route, characterized as "longer, more circuitous and less convenient," *id.* at 404, was available, which also required a crossing over the railroad tracks, but was protected by an automatic arm, bell and lighting device. A "well defined path," discernible on photographic exhibits, established that the shorter route was commonly used. All this was evident to management, which never made any effort to discourage the practice. A fatal injury to one of the employees, who was struck by a passing train while crossing at the unprotected site, resulted in a workmen's compensation award which was upheld on appeal. The Missouri court, finding *Giles* persuasive, also applied the proximity rule. Again, though the longer route was recognized as being safer, emphasis was placed on the fact that the employee was traversing a customary route with the knowledge of the employer who made no effort to prohibit the use. *See generally Daly v. Edwards Engineering Corp.*, 257 A. 2d 730 (injury held compensable under proximity rule where employee's automobile was struck by train at crossing which he had customarily and normally used, was shorter and more convenient than another, and which only persons having business with employer would use; employer never gave instructions as to which route should be used).

There are decisions, of course, which on similar facts have reached contrary results. *See, e.g., General Steel Castings Corp. v. Industrial Commission*, 388 Ill. 66, 57 N.E.2d 454 (1944); *Collier v. B. F. Goodrich Co.*, 90 Ohio App. 181, 104 N.E.2d 600 (1950); *Williams v. Compensation Commissioner*, 124 W. Va. 238, 20 S.E.2d 116 (1942). These cases differ only in that the courts focused on the employee's selection of the more dangerous route, rather than upon the employer's tacit approval of that route. Other cases appearing to support the employer here are distinguishable on the facts. *See, e.g., Draper v. Railway Accessories Co.*, 300 Ky. 597, 189 S.W.2d 934 (1945) (no evidence that employer knew of or consented to more dangerous route; evidence also suggested that employee deviated from route); *Kent v. Virginia-Carolina*

*Chemical Co.,* 143 Va. 62, 129 S. E. 330 (1925) (while walking along track, employee struck by train ¹/₂ mile from place of employment).

In still other cases, the facts were such that the courts found the particular hazard one to which the general public was also exposed. *See, e.g., Christian v. Chicago & I. M. Ry. Co.,* 412 Ill. 171, 105 N.E.2d 741 (1952); *Dent v. Ford Motor Co.,* 275 Mich. 39, 265 N. W. 518 (1936). Finally, in *Drouin v. Chelsea Silk Co.,* 122 Conn. 129, 187 A. 904 (1936), the employer prevailed because there the evidence overwhelmingly established efforts at prohibiting the employees from using the more dangerous route (signs posted on both sides of track; railroad erected stone wall 2¹/₂ feet high on both sides and wire mesh fence four feet high; employer posted signs in plant and gave employees personal notice). *See also Corcoran v. Fitzgerald Bros.,* 58 N.W.2d at 746.

Unquestionably, this case is readily distinguishable from those prior Maryland cases in which application of the proximity rule was rejected. As we indicated earlier, in *Md. Paper Products Co. v. Judson,* 215 Md. 577, the employee was struck while crossing the street; in *Salomon v. Springfield Hospital,* 250 Md. 150, the employee's car was struck while crossing a public highway; in *Pariser Bakery v. Koontz,* 239 Md. 586, the employee was struck by a careening automobile on a public sidewalk; and in *Stoskin v. Bd. of Educ. Mont. Co.,* 11 Md. App. 355, the employee was injured as she alighted from an automobile on a public street. As we have indicated, the proximity rule contains two elements: the presence of a *special hazard* at the particular off-premises point and the close association of the access route with the premises in respect to the "going and coming." What was lacking in the prior Maryland cases, rejecting application of the proximity rule, was the "special hazard" component. In none of those cases was there peculiar and abnormal exposure to a common peril beyond that to which the general public was subjected. Both the circuit court and the Court of Special Appeals noted the factual distinctions between this case and the earlier

Maryland decisions; as we have noted, the circuit court was explicit in resting its determination on the proximity rule, and the Court of Special Appeals, in effect, did so as well.

The point stressed by virtually all courts is that each case involving the "going and coming rule" and its exceptions must turn on its own particular facts. Concededly, the facts here make this a closer case than those reviewed earlier in which the proximity rule was successfully invoked. Unlike most of the cases supporting recovery, the choice confronting the employees here was not between two railroad crossings, one being slightly safer but substantially less convenient. In simple terms, as the plat graphically illustrates, the choice was between a semi-controlled crossing of 18 feet and an unprotected one of 790 feet. Nor, regardless of whether the safer route was 25 feet or 200 feet longer, can it be said that the railroad-track route was *significantly* more convenient. *But see Doyle v. Penton Lumber Co.*, 56 So. 2d 774 (La. App. 1952) (compensation upheld under proximity rule where employee, with employer's knowledge, habitually chose to walk along railroad tracks for 313 feet rather than along gravel road for 400 feet).

Nevertheless, there are compelling considerations which favor recovery here. A not inconsequential number of the employees had been using the railroad route regularly and customarily for at least several years; appellee Wilson had done so for 10 years and appellee Jones for five years. The evidence established incontrovertibly that the employer had known of this practice, but had taken no measures to prevent it. The effect, therefore, of the employer's failure to take any steps to halt the long-established practice, of which it had ample notice, was to demonstrate its consent. When asked why such steps had not been taken prior to the accident, such as the erection of a fence around the parking lot, the employer's principal witness stated that the employer was influenced solely by the amount of cost involved. And when asked why the company had taken no other means to prevent employees from walking along the tracks, the same witness replied that once the employee

"punched out" at the "time shack," the employer no longer had the right to control his movements. Under the facts of this case, neither reason suffices to negate the employer's implied consent to the use of the route in question. Moreover, it can neither be denied that the railroad tracks were in close proximity to the plant, nor asserted that the route was one which also would be used by a member of the general public. No evidence was presented to show that the route was used by anyone but employees; the obvious fact is that no one but an employee would likely travel from the plant to the employee's parking lot.

In the final analysis, the case comes down to whether the result should be controlled by the employees' selection of a significantly more dangerous route or by the fact that the employer had impliedly consented to a route which had been regularly and customarily used for a number of years. We think that the latter course reflects the sounder view. We are reinforced in this conclusion by two legislative mandates that are applicable to the Workmen's Compensation Act. The first is that the Act is to be so interpreted and construed as to effectuate its general social purpose, *Tavel v. Bechtel Corporation*, 242 Md. at 303, and the second is that an injured workman is to be compensated "without regard to fault as a cause of . . . injury." Art. 101, § 15. We find it difficult to escape the conclusion that to give greater weight to the employees' selection of a more dangerous route than to the employer's consent to the use of that route would, in effect, result in an indirect application of the doctrines of contributory negligence and assumption of risk in clear contravention of the Workmen's Compensation Act.

In sum, the employees here were injured while taking a hazardous route — albeit one which was significantly more dangerous, but not substantially more convenient than an alternative means of egress — in close proximity to their place of employment. Additionally, employees had traveled the same route regularly and customarily for at least several years with what amounted to the implied consent of their employer. Finally, there was peculiar and abnormal exposure to a hazard beyond that to which the general public

was subjected. In these circumstances, the proximity rule supports recovery under the Workmen's Compensation Act.

We are considerably less impressed with the employer's argument that recovery should have been denied because the employees were trespassers on the railroad track at the time they were struck. To buttress this argument, the employer points to the presence of a "no trespassing" sign erected by Penn Central near the public crossing. In the face of a similar contention in *Bountiful Brick Co. v. Giles*, 276 U. S. at 159, the Supreme Court aptly responded:

> "It is said that Giles was a trespasser upon the railroad right of way; but if that be established by the evidence, the answer is that, if the company, not being the owner, could under any circumstances defend upon that ground . . . , it cannot avail itself of the defense here because it consented to the trespass."

*Accord, Hunt v. Allis-Chalmers Manufacturing Company*, 445 S.W.2d at 409. Similarly, assuming arguendo that the employer here even has standing to assert trespass as a defense, it cannot rely on that defense because it too consented to the trespass.

We hold, therefore, that the proximity rule does apply here as an exception to the "going and coming" rule, and therefore that the injuries sustained by the employees arose out of and in the course of their employment.

*Judgment affirmed; appellants to pay costs.*