HOMER B. GOFF v. FARMERS UNION
ACCOUNTING SERVICE, INC., AND ANOTHER.

241 N. W. 2d 315.

April 9, 1976—No. 45450.

*C. Douglas Allert*, for relators.
*Perry L. Williams*, for respondent.

PER CURIAM.

Certiorari upon the relation of Farmers Union Accounting Service, Inc. (FUAS), employer, and Reliance Insurance Company, its insurer, to review a decision of the Workers' Compensation Board awarding compensation to the husband and children of the deceased employee on the basis that the injury she sustained and her ensuing death arose out of and were in the course of her employment. Affirmed.

The deceased employee, Jean L. Goff, was struck by an automobile at 1100 North Concord in South St. Paul at approximately 5 p. m. on December 10, 1971. She died on February 6, 1972, and both parties agree that the accident was the substantial contributing cause of her death. Thus, the compensation proceeding focused upon whether such an occurrence was covered under Minn. St. 176.011, subd. 16. Ms. Goff had been employed at FUAS for 19 1/2 years and, at the time of the accident, held the position of accounting service supervisor. It was her habit to arrive at work at 8:30 a. m. and to return to her automobile at 5 p. m. The accident occurred as she was leaving work and crossing Concord Street to reach her automobile.

Since relators contend that accidents which occur on public streets are not compensable and that no special hazard existed as to justify an exception to that general rule, the physical setting of the accident is

relevant. FUAS was the lessee of the building at 1100 North Concord, which was owned by the Farmers Union Central Exchange (FUCE). FUCE, with its main offices at 1185 North Concord, was also the owner of three parking lots, which were available for use by FUAS employees. The two smaller lots are located on either side of the 1100 building, one with capacity of 20 to 25 cars. The parking lot used by decedent and most of the FUAS employees is located directly across from the main entrance to the 1100 building and is also maintained and owned by FUCE. Although there was no formal lease agreement for the use of the lot for the benefit and convenience of FUAS employees, there is evidence that it was available through a mutual understanding between FUCE and FUAS.

Despite a lack of signs to specifically designate the lot as an "employees' parking lot," employees who testified acknowledged that they were aware of the facility and its availability to them. The lot, which was also open to the general public, was maintained and repaired by FUCE's maintenance supervisor.

There are several means of pedestrian access to the lot, including crossing Concord Street at a semaphore 2 or 3 blocks south of the 1100 building and at another painted crosswalk north of the 1100 building approximately 150 feet and directly across from the 1185 building. In addition, a tunnel was maintained to connect the 1185 building with a point approximately 500 feet north of the main entrance of the 1100 building.

Despite these three routes, testimony indicates that most employees used the most direct and convenient route across Concord Street directly in front of the main entrance to the 1100 building. There is no evidence of objection to this use by the employer, with the exception of a memorandum circulated annually to all employees suggesting they should use the crosswalks or the tunnel to cross the street. Rather, the employer, as evidenced by the testimony of Norman Jentink, president of FUAS, was aware that the tunnel was used only rarely to reach the parking lot and that most employees regularly used the direct route across Concord Street. The deceased employee was using this route in front of the entrance to the 1100 building when she was struck, receiving the injuries which were ultimately a cause of her death.

The sole issue for our determination is whether there is substantial evidence[1] to support a finding of the Workers' Compensation Board that the condition constitutes a special hazard of the employment and

---

[1] Mansfield v. Gopher Aviation Co. 301 Minn. 36, 221 N. W. 2d 135 (1974).

that the injury to decedent through its use is compensable as arising out of and in the course of employment. Minn. St. 176.011, subd. 16.

The general rule in actions of this nature is that an employee who is injured in going to or away from the premises of his employment is not entitled to compensation benefits unless at the time of injury he is engaged in a service for the employer. Locke v. County of Steele, 223 Minn. 464, 27 N. W. 2d 285 (1947); 1 Larson, Workmen's Compensation Law, § 15.00. However, the employee is within the protection of the act during a reasonable period of time for purposes of ingress and egress. Olson v. Trinity Lodge, 226 Minn. 141, 32 N. W. 2d 255 (1948).

In Johannsen v. Acton Const. Co. Inc. 264 Minn. 540, 119 N. W. 2d 826 (1963), we adopted the exception to this general rule, set forth in Bountiful Brick Co. v. Giles, 276 U. S. 154, 158, 48 S. Ct. 221, 222, 72 L. ed. 507, 509 (1928), when the employee is exposed to a hazard causally connected to his employment:

"* * * If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance. In other words, the employment may begin in point of time before the work is entered upon and in point of space before the place where the work is to be done is reached. Probably, as a general rule, employment may be said to begin when the employee reaches the entrance to the employer's premises where the work is to be done; but it is clear that in some cases the rule extends to include adjacent premises used by the employee as a means of ingress and egress with the express or implied consent of the employer."

The adoption of that exception was preceded in this state by our analysis in Corcoran v. Fitzgerald Brothers, 239 Minn. 38, 58 N. W. 2d 744 (1953).

The employee in Corcoran attempted to gain egress from the enclosed working area by the use of a ladder to climb to the top of a 10-foot, wire mesh fence. He intended to jump from the top of the fence, but fell and was injured. He testified that he had attempted to leave in this manner to eliminate a walk of 3 1/2 to 4 blocks to the gate provided by the employer for ingress and egress. In restating the basic premise that an employer has a duty to furnish a safe means of ingress and egress, we concluded, in addition (239 Minn. 40, 58 N. W. 2d 746):

"However, where an employer does furnish a safe means of ingress and egress and the employee, for his own convenience, chooses not to use it but, instead, selects a more hazardous means of leaving the premises, *not customarily used by employees,* he steps outside the scope of his employment and it cannot then be said that an injury which he sustains while so leaving the premises arises out of his employment. Associated Ind. Corp. v. Industrial Acc. Comm. 18 Cal. (2d) 40, 112 P. (2d) 615; Yannick v. Lehigh Valley Coal Co. 126 Pa. Super. 431, 191 A. 213." (Italics supplied.)

Thus, an injury sustained by an employee who, solely for convenience, chose a more hazardous route which was also a deviation from the customary route of the employees, was held not compensable.

The employee in Johannsen was injured when struck by a railroad boxcar as he was leaving the employment premises for his lunch hour. There were two avenues of ingress and egress from the construction site. The one not utilized by the employee was protected by warning lights and was located approximately 1,073 feet east of the working area, while the other, more convenient to the site, was habitually used by the employees and required a crossing of railroad tracks. While this latter route was apparently more hazardous, employees were not forbidden by the employer to cross the tracks at this point. The injury occurred as the employee used this latter route and was held compensable on the theory it had been sustained by reason of exposure to a special hazard causally connected with the employment.

Applying this rationale to find the instant injury compensable, the board concluded:

"* * * The crossing at the designated area, therefore, became a normal manner of ingress and egress from the employer's place of employment to the parking lot and back.
* * * [T]his street and crossing constituted a 'special hazard' in employee's normal ingress and egress to and from the main company parking lot facility."

The board noted that this route was customarily taken by the employees with the knowledge of the employer.

In view of the relative proximity of the parking lot to the 1100 building, as well as this habitual use by the employees, we conclude that the board's determination that this route constituted a "special hazard" of decedent's employment and an injury resulting therefrom is compensable must be affirmed.

Respondent is allowed $350 attorneys fees.

Affirmed.