**QUALITY CAR WASH and the Home Insurance Company, Employer-Appellant,**

v.

**Ronald COX, Employee-Appellee.**

Superior Court of Delaware, New Castle County.

Argued Oct. 15, 1981.

Decided Nov. 18, 1981.

Carl Schnee (argued), and Susan C. Del Pesco, Wilmington, for employer-appellant.

Arthur Inden and C. Vincent Scheel (argued), Wilmington, for employee-appellee.

BALICK, Judge.

This is an appeal by the employer from an award of workmen's compensation benefits.

The claimant was struck by a car while crossing a public road. He was walking toward his car, which was parked in the parking lot of a shopping center across the road from the employer's car wash. Although he had just attended the employer's Christmas party, which is customarily held toward the end of the work day on December 24, the Board found that this has no significance, and neither party appeals from that finding. We may therefore say that the claimant was leaving work. The store in the shopping center nearest to the road was formerly a supermarket but had been vacant for several years. The shopping center parking lot is paved. There was also a parking lot next to the car wash. Although the land is not owned by the employer, it is maintained by the employer as a parking lot for employees. The car wash parking lot is unpaved, although the employer has improved it with gravel. Some employees park in that part of the shopping center lot that is directly across the road from the car wash instead of in the car wash lot.

The applicable section of the statute, 19 Del.C. § 2301(14)a. says as follows:

"(14) 'Personal injury sustained by accident arising out of and in the course of the employment':

a. Shall not cover an employee except while he is engaged in, on or about the premises where his services are being performed, which are occupied by, or under the control of, the employer (his presence being required by the nature of his employment),. . . ."

As to employees having a fixed place of work, the generally accepted rule is that injuries occurring while they are going to and from work are compensable if they occur on the employer's premises, but are not compensable if they occur off the premises. 1 Larson's Workmen's Compensation Law § 15.10. Considering the widespread acceptance of the premises rule and the language of the Delaware statute, the Board correctly assumed that the rule applies in Delaware, even though there has been no reported opinion adopting it.

The premises rule is subject to several exceptions. The two possible exceptions in this case are: (1) injuries sustained while the employee travels along or across a public road between two parts of his employer's premises are compensable, and (2) injuries sustained as a result of a special hazard encountered while traveling the normal route to and from work are compensable.

When an employee is injured while traveling between two parts of the employer's premises, courts sometimes refer to the off-premises place of injury as a "special hazard." This can make it unclear whether compensability is based on one or both exceptions. See, for example, the two cases most relied on by the claimant, *Goff v. Farmers Union Accounting Service, Inc.*, Minn.Supr., 308 Minn. 440, 241 N.W.2d 315 (1976), and *Wiley Mfg. Co. v. Wilson*, 280 Md. 200, 373 A.2d 613 (1977), the latter being the only case cited by the Board. The Board concluded, with one member dissenting, that "the defendant exercised control of the paved lot in such a way as to make it part of defendant's premises" and that the "highway posed a special hazard to those employees who made use of the paved lot." It thus appears that the Board found that both exceptions apply in this case. In the interest of clarity, I will discuss them separately.

Exception (1) applies only if the shopping center parking lot is part of the employer's premises. Larson explains the exception as it applies to parking lots, which I will call "the parking lot exception," thus:

"Since, as shown later, a parking lot owned or maintained by the employer is treated by most courts as part of the premises, the majority rule is that an injury in a public street or other off-premises place between the plant and the parking lot is in the course of employment, being on a necessary route between the two portions of the premises. But if

the parking lot is a purely private one, the principle of passage between two parts of the premises is not available, and an employee crossing a public street to get to the parking lot is not protected."

1 Larson § 15.14, p. 4–36

The cases differ as to when a parking lot will be considered part of an employer's premises. Larson summarizes the holdings thus:

"As to parking lots owned by the employer, or maintained by the employer for his employees, the great majority of jurisdictions consider them part of the 'premises,' whether within the main company premises or separated from it. This rule is by no means confined to parking lots owned, controlled, or maintained by the employer. The doctrine has been applied when the lot, although not owned by the employer, was exclusively used, or used with the owner's special permission, or just used, by the employees of this employer."

1 Larson § 15.41, p. 4–62

*Rohrs v. State Accident Insurance Fund*, Or.App., 27 Or.App. 505, 556 P.2d 714, 716 (1976) analyzes the cases cited by Larson in support of his statement of the rule as to parking lots thus:

"With one possible exception the cited cases involve either an employer providing a parking area as an incident of employment, or, where the employer leases his business premises from a lessor, the lessor has provided a parking area for the convenience of employes and customers of the leased premises. In all of the cases the employer has established, by ownership and control, or by custom, some form of right to use the parking facilities and that right is passed to the employe at no cost as an employment benefit. The possible exception is *Elwood v. Herkimer Central School*, 20 N.Y.2d 869, 285 N.Y.S.2d 614, 232 N.E.2d 646 (1967), *rev'g*, 25 A.D.2d 457, 266 N.Y. S.2d 57 (1966). In *Elwood* school officials were given permission by a fraternal organization to allow teachers to park in their lot adjacent to the school."

■ I agree with this analysis. A parking lot is not considered part of the employer's premises unless the employer in some way provides it for employees. With the possible exception mentioned above, in every case the employee has acquired the right to use the lot through his employment. If the employer does not own the lot or has not otherwise acquired the right to use it, he must at least exercise control over it before it may be considered part of his premises. The mere fact that employees use a parking lot with the employer's knowledge is not enough. Compare *Goff*, where there was "a mutual understanding" between the owner of the parking lot and the employer. In the "possible exception," the *Elwood* case, a school teacher was injured in the parking lot across the street from the school. The lot was owned by the Knights of Columbus. The relationship between the Knights of Columbus and the school is not entirely clear, but it seems that school officials had acquired the right for teachers to use the lot by agreement with the Knights of Columbus. The Appellate Division of the Supreme Court voted 4–1 against coverage, but the Court of Appeals reversed by a vote of 4–3. Those who voted against coverage did so on the basis that the arrangement was between the Knights of Columbus and a group of teachers, and that knowledge of the arrangement without any exercise of control over the lot by the employer is not enough to make the parking lot part of the school premises. In short, this is a hard case on the facts and, if an exception, seems to be an exception that proves the rule.

A rule that use of a parking lot by employees with the employer's knowledge makes the lot part of the employer's premises would suffer from the kind of problems described by Larson in his discussion of attempts to broaden the premises rule. 1 Larson § 15.12. Larson there points out that the premises rule is a practical way of defining a reasonable limit for coverage. In determining when a parking lot is part of the employer's premises, the concept of control serves a similar purpose. If we turn

from this to a rule that use of a lot by employees with the employer's knowledge is enough, it will become very hard to draw the line that must be drawn in these cases.

The Board stated its conclusions thus:

"Based upon the evidence received, the Board finds that Quality Car Wash exercised sufficient control of the paved parking area to have this area be considered a part of the premises. We base this finding upon the following facts:

1). We find that Quality used the lot to store or accommodate an overflow of cars waiting to use the car wash services. Quality substantially benefited from this use on several occasions. The Board finds that this action made the lot an extension of the car wash area. In this regard, we do not find that the fact that cars were lined up on the property and the fact that cars were parked upon the property so different a use that control would lie for the overflow but not the parking use.

2). We find that even though Quality provided a parking lot for its employees adjacent to the car wash, the paved parking area was also available for its employees. The provided lot was not the only acceptable parking area. We are convinced that company policy allowed parking on either the provided lot or the paved lot. We find that employees are not told to park only on the provided lot but have the option, and have had the option for a substantial period of time, to park across the street. In fact, the present manager of the car wash testified that he has parked on the paved lot for fourteen (14) years.

3). We find that the so called "provided parking lot" was nothing more than a dirt lot improved with cinders and not even owned by the car wash. Rather, Quality appropriated adjacent state land for use as a parking lot.

4). We find that under all the circumstances of employment at Quality, it was reasonable for employees to use the paved area as a parking space. The permission and control-through-use and the poor condition of the provided parking made the paved lot a logical choice.

In conclusion, we have found that the defendant exercised control of the paved lot in such a way as to make it part of defendant's premises and that it is fair and reasonable to extend workmen's compensation coverage for injuries that occur in connection with that lot."

■ The Board's findings do not support its conclusion. Although the owner did testify that he suggested that they use the car wash lot because it is safer, and some employees testified that they were instructed or assumed that they were supposed to use the car wash lot, it is true that the employer was aware that some employees parked in the shopping center lot and that he did not require them to park in the car wash lot. We have already held that knowledge that employees use a parking lot is not enough to make it part of the employer's premises.

The employer did not acquire the right for his employees to use the shopping center lot. The store that the shopping center lot is meant to serve was formerly occupied by a supermarket, but it had been vacant for several years. When it was occupied, the occupant prohibited car wash employees from using the shopping center lot.

The only use of the shopping center lot by the employer is the occasional use of part of it for the overflow of car wash customers. The line of cars waiting to enter the car wash would then extend across the road and a car wash employee would direct traffic. This happens about 3 times a year.

Contrast the employer's relationship to the car wash lot. Although the land where the car wash lot is located is owned by the State, the owner of the car wash testified that he has permission from the State to use the land. He has graded the lot, improved it with gravel, prevented others from traveling across it, filled potholes, removed snow, and generally maintained it. As the Board itself found, he has provided it as a parking lot for employees.

The Board's finding that it was reasonable for employees to use the shopping center lot is irrelevant on the issue of the employer's control over the shopping center lot. In my opinion, occasional use of the lot for the overflow of car wash customers falls short of the kind of exercise of control by the employer that would justify finding that the shopping center lot is either an employee parking lot or otherwise part of the employer's premises. It follows that exception (1) does not apply.

Larson defines exception (2), which I will call "the special hazard exception," thus:

"The commonest ground of extension is that the off-premises point at which the injury occurred lies on the only route, or at least on the normal route, which employees must traverse to reach the plant, and that therefore the special hazards of that route become the hazards of the employment."

1 Larson § 15.13, p. 4–18

\*　　\*　　\*　　\*　　\*　　\*

"Note that the exception to the premises rule here involved contains two components. The first is the presence of a special hazard at the particular off-premises point. The second is the close association of the access route with the premises, so far as going and coming are concerned."

1 Larson § 15.13, p. 4–22

The employer contends that no special hazard was present in this case. The special hazard exception originated and has most frequently been applied where the employee must cross railroad tracks to get to and from work. This was the situation in *Wiley.* On the other hand, crossing a public street was described as a special hazard in *Goff.* I will not discuss this issue further, but will assume that crossing a public road at a point where there is no traffic signal or crosswalk is a special hazard, because I conclude that the second element of the special hazard exception is not present in this case.

Larson summarizes the cases on the second component of the exception thus:

"As to the second component of the exception, the clearest case for compensability is found when the off-premises route is the *only* means of access to the premises. In a California case, compensation was awarded for the death of an employee who was killed by a train on a crossing twenty feet from the factory gate, on a path between the public road and the factory entrance, since this was the sole authorized means of ingress and egress.

The special-hazard exception has been applied also when the off-premises route, while not the exclusive means of access, was the 'usual' or 'expected' or 'regularly used,' 'normally used,' or 'habitually used' route, or the route used by almost all of the employees; but the exception has been rejected when the place of injury was not a 'recognized entrance.'

If an alternate route is available, and if it is substantially more remote or more inconvenient, the special hazard exception to the premises rule will usually be applied. Conversely, if a reasonably safe and convenient route is available, and if the employee chooses a substantially more dangerous route, the exception will usually not be applied. A typical example is walking along a railroad right-of-way instead of a road. However, it has been held that when an employee has a choice of methods of ingress and egress, and both contain elements of danger, the fact that he does not select the safer is not necessarily fatal to compensability. In this instance, the employee had to cross railroad tracks on either route, but he chose the crossing that did not have safety signals instead of the one that did.

The underlying rationale for this special-hazard exception in terms of compensation theory will be discussed later in connection with the broad analysis of the quantum theory of work-connection, under which a weak course of employment element (in this case the off-premises feature) can be offset by a strong arising-out-of causal element (in this case the heightened degree of hazard)."

1 Larson § 15.13, p. 4–29

The following is Larson's explanation of the underlying rationale of the premises rule exceptions:

"We have, then, a workable explanation of the excéption to the premises rule: it is not proximity, or reasonable distance, or even the identifying of surrounding areas with the premises: it is simply that, when a court has satisfied itself that there is a distinct 'arising out of' or causal connection between the conditions under which claimant must approach and leave the premises and the occurrence of the injury, it may hold that the course of employment extends as far as those conditions extend."

1 Larson § 15.15

As Larson's summary shows, courts consider several factors in determining whether there is a sufficiently close connection between the route taken by the employee when he was injured and the employer's premises. If there is an alternative route, they weigh the relative danger and convenience of the route taken and compare it with the alternative route. Compensation will not necessarily be denied simply because the employee did not take the safest route, but may be awarded if he took the more convenient route, particularly if it was the customary route and the employer was aware of it and did nothing to prevent employees from using it. This was the situation in both *Goff* and *Wiley.*

The special hazard exception applies only if the rationale of these cases controls. The claimant contends that he took a customary route to the employer's premises, which is more convenient though perhaps somewhat more dangerous, and that the employer was aware that this was a customary route and in effect consented to it.

■ In my opinion, this rationale does not apply here. In those cases, the employee was exposed to the hazard because of the location of the employer's premises. Thus, in *Goff* it was necessary for the employee to cross a public street and in *Wiley* it was necessary to cross railroad tracks. I consider *Goff* and *Wiley* to be cases where the parking lot exception applies, since the employees were exposed to the hazard because of the location of the employee parking lot in relation to the place where the employees performed their work. In any event, both

were close cases, as the opinions themselves state. Even though the employees did not take the safer alternative route, workmen's compensation benefits were nevertheless awarded because they took the more convenient customary route, with the knowledge and in effect with the consent of the employer. By contrast, in the present case the claimant was not exposed to the hazard because of the location of the employer's premises or because of the location of an employee parking lot in relation to the place where employees perform their work, but because he chose to use the shopping center lot. The claimant could have easily avoided crossing the road by using the parking lot provided by the employer.

■ Even if the special hazard exception might be applied where the location of the employer's premises does not cause the employee to cross a public road, railroad tracks, or some other hazard off the employer's premises while traveling to and from the employer's premises, I would nevertheless conclude that the employee was not using the normal route in the present case for two reasons.

First, the route taken by the claimant was not more convenient in the sense that it was the most direct or easiest access route. It was more convenient only in the sense that it better suited the personal preferences of the employees who used it. Some employees would use the shopping center lot only after receiving the free weekly car wash for employees. The claimant, who is unusually particular about his car, always parked in the shopping center lot because the paved lot is cleaner and he could better keep an eye on his car. The car wash lot is nevertheless the most convenient in the sense of being right next to the car wash.

Second, walking across the road is not the usual route for most employees, but only for those who park in the shopping center lot. The record does not show how many employees work at the car wash at a given time. Although the situation doubtless varies from day to day, and estimates differed, all the witnesses agreed that most of the employees use the car wash lot. In these

circumstances, walking across the road is not the normal route to and from work.

All injuries sustained by employees going to and from work are causally connected with work in the sense that the employee would not have been injured at a particular location if he had not been on the way to or from work. This is not what is meant by "a distinct 'arising-out-of' or causal connection between the conditions under which claimant must approach and leave the premises and the occurrence of the injury." Under the circumstances of this case, the route used by the claimant is not so closely associated with the employer's premises as to justify an exception to the general rule that persons injured off the employer's premises while traveling to and from work are not entitled to compensation. I therefore conclude that the special hazard exception does not apply. Since neither exception applies, the decision of the Industrial Accident Board must be reversed.