James P. COOK, III,
Employee–Below, Appellant,

v.

A.H. DAVIS & SON, INC.,
Employer–Below, Appellee,

and

Joyce L. Wright and William E. Matthews, acting as the Industrial Accident Board of the State of Delaware.

Superior Court of Delaware,
New Castle County.

Assigned: June 5, 1989.
Decided: Oct. 5, 1989.

Joseph W. Weik, of Czajkowski, Weik & Knepper, Wilmington, for Employee–Below, Appellant.

J.R. Julian, of J.R. Julian, P.A., Wilmington, for Employer–Below, Appellee.

BALICK, Judge.

This is an appeal by James Cook from a finding of the Industrial Accident Board that his injuries did not arise out of and in the course of his employment.

Mr. Cook worked on a crew that put siding on new houses. He was hired and supervised by the crew chief, Milton Jarmon. Pay was based on the amount of work done and the hours of work were not fixed. On the date of his injury, August 24, 1987, Mr. Cook and another crew member, David Jarmon, the son of Milton Jarmon, worked late to finish a particular house. The injury occurred while Mr. Cook was driving himself and David Jarmon home in Milton Jarmon's truck. After stopping for dinner, they resumed their route home, when the truck broke down. Mr. Cook unsuccessfully tried to fix the truck and then walked to a pay phone to call Milton Jarmon for instructions. Mr. Cook suggested that the truck be left until the next morning, because he had already tried everything possible to get it started. However, Milton Jarmon did not want to leave the truck where it was. He told Mr. Cook to wait for him at the pay phone, and then picked up Mr. Cook and drove him to the location of the disabled vehicle, where Mr. Jarmon positioned his car to provide additional light for Mr. Cook to repair the truck. Shortly before midnight while Mr. Cook was working on the disabled vehicle, a third party collided with it, resulting in serious injuries to Mr. Cook, including amputation of his leg above the knee.

The employer argued that the case is governed by the general rule that injuries to employees having a fixed place of work are not compensable when they occur off the premises, as in the present case in which Mr. Cook was injured while on the way home from work. The employee argued that several of the recognized exceptions to this rule apply.

Since the material facts are not in dispute, the court must review the Board's application of the law to the facts. The Board ruled as follows:

The Board finds that the accident in which the claimant sustained injury did not arise out of and was not within the course of his employment with the employer, in accordance with 19 *Del. C.* Section 2301(15)(a) and Section 2304. The claimant, at the time of the accident, was returning home from work. The general rule is that when an employee has a fixed place of employment, injuries suffered while traveling to and from the workplace are not compensable. *Quality Car Wash v. Cox*, Del.Super., 438 A.2d 1243 (1981). While there are exceptions to this rule, the Board finds no evidence to support a conclusion that the claimant fits into any exception, all of which require some control of the employee by the employer.

The first exception which the claimant puts forward, citing Maryland and New Jersey case law as authority, is a situation where an employer provides transportation for an employee to and from work. The truck which the claimant drove was Mr. Jarmon's personal truck and was not provided by the employer.

The second exception advanced by the claimant applies in a situation where an employee is entitled to remuneration for traveling time or transportation costs. While the claimant stated that at the time of hire, Mr. Jarmon told him that he would be compensated for driving the truck, the claimant was unable to establish that he received such compensation and was unsure as to whether he actually received it. Furthermore, there was no evidence presented to show that the employer was aware of or agreed to such compensation.

The third exception cited by the claimant is the special errand exception which arises when an employee makes an off-the-job-site journey which is viewed as an integral part of work. In connection with this exception, the claimant argues that the accident happened in furtherance of the employer's interest because the truck was a necessary part of the job. The claimant adds that the accident happened after the claimant was specifically ordered by his foreman to repair the truck so that it would be available for work the next day. The Board finds that while Mr. Jarmon may have had personal reasons for hiring someone with a license to transport materials and workers to the job site, possession of a valid drivers license was not a condition of employment with the employer. We find that a vehicle, while helpful, was not required for moving siding at a job site, and transportation off the job site was not authorized by the employer. Any actions taken by the claimant or Mr. Jarmon with respect to the truck were personal in nature and unrelated to work.

Before addressing the Board's reasoning, I will mention three matters that apparently played no part in the Board's decision. The evidence on these matters was introduced over the claimant's objection, and there is a concern that it might have unfairly prejudiced the claimant.

■ The claimant has obtained a substantial settlement from the third-party tortfeasor. However, he nonetheless has a right to pursue his claim for workmen's compensation, although the employer is entitled to a credit in the amount of the settlement, less the expenses of recovery, in accordance with 19 *Del. C.* § 2363.

There was evidence that David Jarmon was intoxicated at the time of the accident and that empty beer cans and marijuana were found in Milton Jarmon's truck. Mr. Cook testified that he had one drink during dinner and the investigating police officers testified that there was no evidence that he was under the influence of anything or that intoxication played any role in the accident. Although the right to compensation may be forfeited if an employee is injured as a result of intoxication, this was not an issue listed for trial in the pretrial order.

Finally, shortly before the hearing and some nine months after the accident, the crew chief, Milton Jarmon, was arrested for selling discolored siding belonging to the employer from his house. These charges were pending at the time of the hearing. However, there is no evidence that illegal activity was in progress at the time of the accident or that Mr. Cook was ever involved in any way.

The Board based its decision on the testimony of Kirk Davis, vice president of the employer. Mr. Davis testified that employees are responsible for their own transportation and their work ends when they leave the job site.

■ I conclude that the Board did not adequately consider the position of Milton Jarmon in the company and his control over Mr. Cook. Mr. Jarmon had worked for the company thirty-nine years. Mr. Davis went to the job site a couple of times a week to check on progress, but Mr. Jarmon exercised complete authority and control over the crew. He hired Mr. Cook about six weeks before the accident, assigned his job duties, and determined his pay. Mr. Cook had to sneak a look at his paycheck, which Mr. Jarmon would cash and, after making deductions, pay the balance to Mr. Cook, to discover the name of his employer.

Milton Jarmon's truck was necessary to do the job. All of the crew members who testified said that they did not work when the truck was disabled. For one thing, the truck was used to move siding from the storage trailer to the house to which the siding was applied. In finding that the truck was not required at the job site, the Board seems to have misunderstood Mr. Davis' testimony:

MS. WRIGHT: Did you at any time pay Mr. Jarmon for the use of his truck?

THE WITNESS: No.

MS. WRIGHT: That was not part of—

THE WITNESS: That was not part of—our agreement is that he uses his truck. We require our employees to be

able to move material from our trailer to the house they are working on. If it is easier for them to use a truck, that is wonderful. If they have a car, which some people do, they use their car to move it.

It is clear that the crew needed some vehicle to move siding on the job site.

■ If an employee is required as part of his job to bring his own vehicle for use during his working day, the trip to and from work is within the course of employment. 1 Larson, Workmen's Compensation Law, § 17.50. The reasons for this rule are that the employee is compelled to submit to the hazards of private motor travel and it is a service to the employer to convey a vehicle devoted to the employer's purposes to and from the premises. For the same reasons, the course of employment extends beyond the actual trip to necessary ancillary activities, such as repairs, connected with getting the vehicle to work.

■ The rule excluding off-premises injuries during the journey to and from work does not apply if the making of that journey is in itself a substantial part of the service for which the worker is employed. 1 Larson § 16.00. Since the crew lived a substantial distance from the job site and none of them had driving privileges, Milton Jarmon needed someone with driving privileges. One of the duties that he assigned to Mr. Cook was driving the crew to and from work. Thus, driving and the necessary ancillary activity of trying to repair the disabled truck were part of Mr. Cook's service. Moreover, even when an off-premises journey would not normally be covered, it may be brought within the course of employment when the special inconvenience, hazard, or urgency connected with it is sufficiently substantial to be viewed as part of the service itself. 1 Larson § 16.10.

None of the above rules depend on whether or not Mr. Cook was separately compensated for travel or working on the truck. It is true that Mr. Cook did not know how Milton Jarmon calculated his pay. However, his testimony that Mr. Jarmon agreed to reimburse him for travel was not disputed by Mr. Jarmon. When asked about how much crew members were paid, Mr. Davis testified that "Mr. Jarmon is responsible for making an agreement with his employees." If Mr. Jarmon did agree to pay Mr. Cook for travel, the trip would be in the course of employment. 1 Larson § 16.20.

All of the crew members testified that the truck was also used to transport siding to Milton Jarmon's house for cutting. Milton Jarmon testified that Mr. Davis was aware of this practice. Mr. Davis testified that Milton Jarmon was instructed that siding should not be removed from the job site, but he admitted that cutting siding at Mr. Jarmon's house would benefit the employer. The Board found that taking siding off the job site was not authorized. However, there is no evidence that Mr. Cook was aware of this rule. Since the evidence does not establish that Mr. Cook was transporting siding to Mr. Jarmon's house for cutting when he was injured, it is not necessary to discuss whether the fact that removing siding from the job site violated company policy would effect Mr. Cook's claim.

Mr. Cook's injury would be compensable even if the above rules did not apply. As stated at 1A Larson § 27.41:

When any person in authority directs an employee to run some private errand or do some work outside his normal duties for the private benefit of the employer or superior, an injury in the course of that work is compensable.

The reason for this rule is explained at 1A Larson § 27.44 thus:

The technical reason for these holdings is that, whatever the normal course of employment may be, the employer and his supervisory staff have it within their power to enlarge that course by assigning tasks outside the usual area. If they do not assign these tasks on the strength of the employer-employee relation on which compensability depends, then what is the source of authority by which the task is assigned?

The practical reason for the rule is that any other view places the employee in an intolerable dilemma: if he complies with the order, he forfeits compensation protection; if he does not comply, he gets fired.

It is not necessary to decide whether Milton Jarmon had authority to order Mr. Cook to repair the truck, because the question of the actual authority of the person issuing the order is not decisive. As explained at 1A Larson § 2746:

> But even where the order is a gross excess or even abuse of authority, surely the employee, who has no choice but to comply, should not be made to pay the price of his superior's wrong.

Since Mr. Cook was injured while complying with his superior's order to repair the truck, his injury is compensable.

For these reasons, the decision of the Industrial Accident Board denying compensation is reversed and the case is remanded for further proceedings.

Counsel may submit an order.